No. 47,311

IN THE MATTER OF THE AD VALOREM PROPERTY TAX VALUATION FOR THE TAXABLE YEAR 1970 OF MOBIL PIPE LINE COMPANY, (Crude Pipeline) and IN THE MATTER OF THE AD VALOREM PROPERTY TAX VALUATION FOR THE TAXABLE YEAR 1970 OF MOBIL PIPE LINE COMPANY, (Products Pipeline). MOBIL PIPELINE COMPANY, *Appellee,* v. HAROLD C. ROHMILLER, Director of Property Valuation, *Appellant.*

(522 P. 2d 923)

Opinion filed May 15, 1974.

*Clarence J. Malone,* of Topeka, argued the cause and *William M. Schutte,* of Topeka, was with him on the brief for the appellant.

*Richard Jones* and *Robert J. O'Connor,* of Hershberger, Patterson & Jones, of Wichita, argued the cause, and *W. Forrest Smith,* of Dallas, Texas, was with them on the brief for the appellee.

*Vern Miller,* attorney general, and *Jonathan P. Small,* assistant attorney general, were on the brief *amicus curiae.*

Opinion of the court was delivered by

SCHROEDER, J.: This is an appeal by the Director of Property Valuation in an ad valorem tax case from a judgment of the District Court of Lyon County, Kansas, reversing orders of the State

Board of Tax Appeals determining the state-wide 1970 ad valorem assessment of Mobil Pipeline Company's tangible property, consisting of its products line and its crude line located in Kansas, and determining the assessed valuations of such property.

The underlying question on appeal concerns the validity of the orders of the State Board of Tax Appeals determining the assessed valuation of Mobil's property in Kansas for the year 1970.

A similar case was before this court in *Northern Natural Gas Co. v. Dwyer*, 208 Kan. 337, 492 P. 2d 147. There, however, the 1969 valuation and assessment of the public utilities' property was made pursuant to K. S. A. 1968 Supp. 79-503, which provided for the determination of justifiable value, while here, by reason of subsequent legislative amendment, the valuation and assessment of the public utilities' property in Kansas was made pursuant to K. S. A. 79-5a04. (L. 1969, ch. 434, January 1, 1970.)

The Kansas segments of the interstate products line and crude line of Mobil Pipeline Company (appellee) located in 32 Kansas counties, including Lyon County, Kansas, were initially assessed by the Director of Property Valuation (hereafter the Director) in the amount of $1,797,650.00 for the products line and in the amount of $4,150,985.00 for the crude line by orders dated June 5, 1970, fixing for ad valorem tax purposes the 1970 assessed valuation of the two Kansas segments of Mobil's interstate pipeline. Mobil is a state assessed public utility. The foregoing valuation and assessment was appealed by Mobil to the Board of Tax Appeals (hereafter the Board) pursuant to authority granted by K. S. A. 74-2438. On the 7th day of August, 1970, the Board heard Mobil's appeals and on the 25th day of August, 1970, determined the matters by making written findings of fact which it entered with its orders. The pertinent portion of the order concerning the crude line made by the Board reads:

"After hearing the evidence and after being fully advised, the matter was taken under advisement.

"Now, on this 25th day of August, 1970, the matter of the valuation of appellant's property comes on for decision by the Board, and the Board finds as follows:

"1. The appellant owns pipeline properties and related facilities which are operated to transport crude oil and products derived therefrom in interstate commerce.

"2. That pursuant to the Kansas Statutes Annotated the Director of the Property Valuation of the State of Kansas determined that the system fair market value of the applicant's property on January 1, 1970, was $304,771,-

292.00; that 4.54% of that should be allocated as a Kansas Factor; that the Kansas Fair Market Value of the appellant's property would thus be $13,836,-617.00; and with the same assessed at the 30% rate pursuant to the Kansas Statutes Annotated the appellant's Kansas assessed valuation would be $4,-150,985.00.

"3. That the appellant is appealing from the Order of the Director of the Property Valuation Department of the State of Kansas, dated June 5, 1970, fixing and determining among other things the above Kansas Assessed valuation of the appellant's property.

"4. That the appellant contends that the Director of the Property Valuation Department of the State of Kansas did not properly consider and use the factors set out in K. S. A. 79-5a04 in determining the Fair Market Value of the appellant's property pursuant to K. S. A. 79-5a03.

"5. That the appellant contends that the Director of Property Valuation of the State of Kansas used methods and formula of evaluation having no relation to the Fair Market Value, true value or actual value of appellant's property and has failed to consider or apply the factors required by the statute to be considered and applied with the result that the tangible property of the appellant has been assessed at a ratio many times greater than the real and personal property of other taxpayers located in the same counties in which the appellant operates and owns property and subject to the same tax levy.

"6. That the appellant further contends that due to depleting oil reserves and/or sources insufficient consideration was given to this factor by the Director of the Property Valuation Department of the State of Kansas.

"7. That the Director of the Property Valuation Department of the State of Kansas in determining the fair market value of the appellant's property within the State of Kansas considered all of the approaches and factors set out in K. S. A. 79-5a04, together with pertinent additional information and evidence available to him and as a result of his consideration he correctly determined the fair market value of the appellant's property within the State of Kansas.

"8. That the evidence revealed that the appellant's lines were presently operating at 50-60% of their capacity and that the Kansas Director of Property Valuation had recognized the depleting condition of the reserves and sources of oil available for transmission in the appellant's lines making an adequate present allowance factor.

"9. *That based on the evidence presented the correct assessed valuation of the appellant's properties within the State of Kansas is $4,150,985.00* the same as was determined by the Kansas Director of Property Valuation." (Emphasis added.)

Mobil's appeal was thereupon denied by the Board's order which sustained the assessed valuation of Mobil's properties within Kansas as determined by the Director of Property Valuation.

A similar order was entered with respect to Mobil's products lines, except for the following: That the system fair market value of Mobil's property on January 1, 1970, as to the product line was determined to be:

". . . $299,608,333.00; that 2% of that should be allocated as a Kansas Factor; that the Kansas Fair Market Value of the appellant's property would thus be $5,992,167.00; and with the same assessed at the 30% rate pursuant to the Kansas Statutes Annotated the appellant's Kansas assessed valuation would be $1,797,650.00."

With respect to the products line the Board specifically found:

"7. *That based on the evidence presented the correct assessed valuation of the appellant's properties within Kansas is $1,797,650.00,* the same as was determined by the Kansas Director of Property Valuation." (Emphasis added.)

In all other respects the two orders were substantially identical.

Thereafter, and on the 25th day of September, 1970, Mobil appealed pursuant to K. S. A. 1970 Supp. 74-2426, to the District Court of Lyon County from the Board's orders heretofore related.

K. S. A. 79-5a04, insofar as material to this appeal, reads:

"The valuation of the property, both real and personal, tangible and intangible, of all public utilities as defined in this act shall be the fair market value thereof and what such property would sell for under conditions which usually govern the sale of property in that character. The property valuation department, in determining the fair market value, shall ascertain and determine as nearly as it can and consider:

"(1) Original cost.

"(2) Original cost less depreciation, or replacement cost new less depreciation, provided that where either method is used proper allowance and deduction shall be made for functional or economic obsolescence and for operation of non-profitable facilities which necessitate regulatory body approval to eliminate.

"(3) The market or actual value of all outstanding capital stock and funded debt excluding current and deferred liabilities.

"(4) The utility operating income *after deduction of all income taxes,* capitalized in the manner and at such rate or rates as shall be just and reasonable.

"(5) Such other information or evidence as to value as may be obtained that will enable the property valuation department to determine the fair market value of the property of such companies." (Emphasis added.)

Notices of assessed value sent by the Director to Mobil will best illustrate the basic point made by Mobil throughout these proceedings. For the products line the Director's notice sets forth the following:

"I. Cost Approach:
1. Original cost ..................................$ 204,792,805.
2. Original cost less depreciation ..................$ not available
3. R. C. N. less depreciation ......................$ 175,882,037.
4. _____ ..................$_____

"II.  Market Approach:
   5.  Stock and Debt ..............................$_____
   6.  Stock and Debt ..............................$    N/A
   7.  Market Comparison ...........................$ 315,339,961.
"III.  Income Approach:
   8.  $22,673,497.  revenue cap'd.@7%. ...............$ 323,907,100.
   9.  $14,870,570.  revenue cap'd.@7%. ...............$ 212,436,714.
  10. _____ revenue cap'd.@___%. .............$
"IV. 11.  System-Fair Market Value .....................$ 299,608,333.
  12.  Kansas-Allocation Factor ....................  2%
  13.  Kansas-Fair Market Value .....................$  5,992,167.
  14.  Kansas-Assessment Per Cent ...................  30%
  15.  Kansas-Assessed Valuation ....................$  1,797,650."

The notice of the Director for the crude line to Mobil set forth the cost approach, the market approach, and the income approach identically as above. But under heading IV entries eleven through fifteen read:

"IV. 11.  System-Fair Market Value .....................$ 304,771,292.
  12.  Kansas-Allocation Factor ....................  4.54%
  13.  Kansas-Fair Market Value .....................$  13,836,617.
  14.  Kansas-Assessment Per Cent ...................  30%
  15.  Kansas-Assessed Valuation ....................$  4,150,985."

The foregoing notices set out the Director's appraisal indicators of Mobil's system fair market value. They also showed the manner in which the director allocated his appraisal to the two pipelines, by dividing the Kansas allocation factor of 6.54% between the two lines, giving the products line 2% and the crude line 4.54% out of the total Kansas allocation. The notices also indicate a difference between the system fair market value of the two pipelines. This is challenged by Mobil in its notice of appeal *to the district court.* There is no controversy as to the allocation factor or its division between the two pipelines as used by the Director. Mobil does not attack the separation of the two pipelines for assessment purposes as an unreasonable classification. The issues on appeal to the Board of Tax Appeals and to the District Court of Lyon County were whether the determination of the system value was unreasonable and excessive, and whether the provisions of 79-5a04 (4) had been violated.

Lines eight and nine of the notices of assessed value under the heading "III. Income Approach" are to be observed. The focal point of Mobil in challenging the assessed valuation of its pipelines in Kansas, as being the product of constructive fraud, is founded upon the entry at line number eight. Mobil argues the

Director instructed his staff to capitalize an income figure *before deduction for income taxes* at line number eight, contrary to 79-5a04 (4), *supra*, which requires the capitalization of the utility operating income *"after deduction of all income taxes."*

In 1971 the legislature amended 79-5a04 (4) by deleting the words "after deduction of all income taxes" (L. 1971, ch. 295, § 1; effective April 19, 1971).

Line number nine on the Director's notices of assessed value capitalized the amount on line eight less income taxes, thus disclosing in the notices of assessed value under "III. Income Approach" a capitalization value based upon income before deductions for all income taxes (line eight) and a capitalization value based upon income after deduction for all income taxes (line nine).

From the foregoing, the notices of assessed value show that for both of Mobil's pipelines the Director used identical appraisal indicators of system fair market value. Two of these were above his final determinations of system value: Market comparison at $315,339,961.00 and the first income approach (line eight which was before deduction of income taxes) at $323,907,100.00. The appraisal indicators of original cost less depreciation and stock and debt were indicated as "not available". Original cost, reconstruction new less depreciation, and the second income approach (line nine which was after deduction of income taxes and indicated a system value of $212,436,714.00) all were less than the Director's final determinations of system value. In both income approaches, the Director used a capitalization rate of 7%.

The record discloses the reasons for the variation in the system value on the crude line and the products line, but we find it unnecessary to pursue and explain the variation because it is immaterial to the basic issues presented on appeal to this court.

In its notices of appeal to the District Court of Lyon County from the orders of the Board in each case Mobil alleged among other things:

"4. The Order of the Board of Tax Appeals is unreasonable, arbitrary and capricious within the meaning of Kansas law applicable to ad valorem property taxation in general and of K. S. A. 74-2426 specifically, in that:

"The valuation of Appellant's property as fixed and determined by the Director per his Order was unreasonable, arbitrary and capricious in that it was made in violation of the law and of the statutes of the State of Kansas and of the Constitutions of the United States and of the State of Kansas; and

"That by sustaining the Director's determination of valuation and his Order, *in toto*, the Board of Tax Appeals adopted and made its own the Director's

unreasonable, arbitrary and capricious conduct in making a valuation of Appellant's property in violation of the law and of the statutes of the State of Kansas and of the Constitutions of the United States and of the State of Kansas.

"5. The Director's determination of the valuation of Appellant's property was unreasonable, arbitrary and capricious and, by adoption thereof, the Order of the Board of Tax Appeals was equally unreasonable, arbitrary and capricious in the following particulars:"

Mobil then set forth the provisions of 79-5a04, *supra*, and further alleged in its notices of appeal:

"The evidence adduced at the hearing of Appellant's appeal before the Board of Tax Appeals established that, in valuing Appellant's property, the Director placed his principal reliance upon the 'utility operating income' method of evaluation, enumerated as '(4)' above, this subparagraph.

\* \* \* \* \*

"(2) The evidence adduced at the hearing of Appellant's appeal before the Board of Tax Appeals established that, notwithstanding the express requirements of K. S. A. 79-5a04 (4) that the utility operating income be computed 'after deduction of all income taxes,' the Director in valuing Appellant's crude pipeline and products pipeline properties for 1970 ad valorem property tax purposes not only failed to exclude income taxes from his utility operating income calculations, but in fact added thereto for federal income taxes the total amount for the pipelines together of $7,802,927.00."

The trial court after hearing the matter and giving consideration to the transcript, pleadings, argument of counsel, the contents of the numerous briefs and suggested findings of fact and conclusions of law submitted by counsel for the parties determined the matter in a memorandum opinion filed October 18, 1972, wherein it adopted Mobil's suggested findings of fact one through fourteen verbatim, except for a few minor deletions. These findings recited the chronology of events, the appeals, the statutory authority for them and the issues presented at the various procedural stages of the case. Commencing with No. 8 the findings of the trial court read:

"8. The Director admitted and the evidence is not controverted that the basic data which he used in making his Cost and his Income Approaches in valuing Mobil's pipeline properties for 1970 Kansas ad valorem property tax purposes came from appellant's filings with and reports to the ICC, particularly ICC Valuation Docket No. 1311 and ICC Form P. This data included: reproduction cost new less depreciation, operating expenses, original cost, depreciation, income, and income tax. Likewise, the taxpayer admitted and it is not controverted that all the basic data used by Dr. Herbert B. Doreau, appellant's expert valuation witness, in testimony before the Board came from the same ICC docket and report. The Director, in his Cost and his Income Approaches, and appellant valued appellant's pipeline properties using identically the same basic data. The only differences between the figures used

before the Board by appellant and by the Director in the Director's Cost and Income Approaches were the amounts to be capitalized and, in some instances only, the capitalization rates. Both before the Board and on these direct appeals, the appellant consented to the 7% capitalization rate used by the Director. On these direct appeals no issue is raised as to the correctness of the 7% rate of capitalization, and the only difference between the figures of the appellant and the Director is the amount to be capitalized.

"9. In making their respective computations of Mobil's System Fair Market Value for 1970 Kansas ad valorem property tax purposes, the Director and the appellant ascertained and determined as nearly as they could and considered each of the factors enumerated in K. S. A. 79-5a04. Nonetheless, both the Director and the appellant placed virtually total reliance upon the income approach, which is enumerated and defined in K. S. A. 79-5a04 (4).

"10. K. S. A. 79-5a01 et seq was enacted by the Kansas Legislature in 1969 and was applicable to ad valorem property tax valuation for the first time in 1970. That statute was a specific statute, dealing expressly and solely with public utilities and the ad valorem property taxation of public utility taxpayers only. In prior years, the applicable statute was a general statute, entitled 'Rules for Valuing Property', K. S. A. 79-501 et seq, and was applicable to all real and tangible personal property subject to taxation.

"An essential difference exists between a business enterprise which operates in a free and unregulated market and a business enterprise such as Mobil which operates in a regulated market and is subject to the control of regulatory agencies such as the ICC. Regulation restricts and determines the amount of income available to the investor and for capitalization and valuation purposes. This restriction is not imposed in the free market.

"The income approach factor defined in K. S. A. 79-5a04 (4) was merely a clarification as applied to public utilities of the more generally stated income approach defined in K. S. A. 79-503 (g). It was not a substantial alteration of the concept of the income approach as that concept was incorporated in the prior statute. This clarification gave due recognition to the above-stated essential difference between business enterprises operating in free markets and those operating in regulated markets.

"11. K. S. A. 79-5a04 (4) expressly required the Director to make a 'deduction of all income taxes' before capitalizing utility operating income. In making his alternative income approach at line 8 of the Notices, the Director added to the $8,690,392.00 Carrier Operating Income shown on ICC Form P the amount of $7,802,927.00 shown thereon as an Operating Expense for Income Taxes. The figures which the Director capitalized at line 8 of his Notices, therefore, included Income Taxes. The Director's failure to exclude Income Taxes from the Operating Income which he capitalized in this Income Approach was a direct violation of the express language of K. S. A. 79-5a04 and was, therefore, unreasonable, arbitrary and capricious within the meaning of K. S. A. 79-2426 and was in fraud of Mobil's rights.

"12. The Director testified that he considered every indication of value shown on his Notices, considering them all and giving no particular weight to any one. The error thus made by the Director in the one income approach is so substantial as necessarily to have had a material effect on his determination

of the valuation of appellant's pipeline properties for 1970 Kansas ad valorem property tax purposes. This error being fraudulent as to appellant, the Director's determination of such valuation likewise is to that extent fraudulent.

"13. The Director failed properly to consider and to apply K. S. A. 79-5a04, and specifically sub-paragraph (4) thereof in the respects hereinabove found. This failure constitutes unreasonable, arbitrary and capricious conduct as a matter of law within the meaning of K. S. A. 74-2426, and is a fraud upon the rights of Mobil. That this fraud is substantial is further emphasized by the findings hereinbefore made that, in valuing Mobil's pipeline utility properties for 1970 Kansas ad valorem property tax purposes, the Director placed virtually total reliance upon the income approach contained in sub-paragraph (4) of the statute. The values and assessments for appellant's pipeline properties as thus determined by the Director and as affirmed in their entirety by the Board likewise are—insofar as they are affected by the Director's failure properly to apply the statute in the respects hereinabove found—unreasonable, arbitrary and capricious as a matter of law within the meaning of K. S. A. 74-2426, are in fraud of the rights of appellant, and are therefore illegal and void.

"14. Under K. S. A. 74-2426: these cases are 'appeals', not judicial reviews; they are to 'proceed as an original action' and the proceedings are denominated a 'trial'; they are to conclude in a 'final decision' which 'shall be entered as a judgment as in other civil cases', and that judgment shall be against the appellant 'or against the Director' as the case may be.

"The Court concurs in the action of both the Director and the taxpayer in applying the income approach as the principal indicator of the value of Mobil's utility properties for 1970 Kansas ad valorem property tax purposes. Because both the Director and the taxpayer used identically the same basic data in their respective income approaches, as hereinbefore found, this Court can calculate the amount of valuation shown in the Director's Notices which resulted from the Director's failure properly to apply K. S. A. 79-5a04 in the respects hereinbefore found. Such calculation will not involve this Court in the assessment process. Rather, it is 'a mere calculation' based on the findings herein made which are themselves based on admitted and uncontroverted evidence, all within the meaning of *Hitch Land & Cattle Co. v. Board of County Commissioners* (1956), 179 Kan. 357, 295 P. 2d 640.

"Obvious practicalities dictate that this Court determine forthwith the extent to which the valuations found by the Director are affected by his aforesaid failure properly to apply the statute. 'The work of assessing property for taxation must be done speedily and the result must not be long in doubt. Otherwise, chaos would be the result. The matter of first consideration is that the business of government should be carried on.' (*Mobil Oil Corporation v. McHenry* [1968], 200 Kan. 211, 228, 436 P. 2d 982, quoting *Hanzlick v. Republican County Comm'rs.* [1939], 149 Kan. 667, 672, 88 P. 2d 1111.) Sixty-four refund suits wherein Mobil is plaintiff and involving 1970 Kansas ad valorem property taxes presently are pending in twenty-nine Kansas counties. The disposition of those refund suits appears to be directly related to and substantially controlled by the instant cases. Further, none of the cases recently decided by the Kansas Supreme Court arose under K. S. A. 79-5a04 nor any statute containing substantially the same provision as sub-paragraph (4)

thereof, nor did they present issues similar to those issues raised on these appeals.

"15. Within the limited issues of this case, as defined by the direct appeals statute (K. S. A. 74-2426) which allows such an appeal only where the order of the Board is allegedly arbitrary, unreasonable and capricious as to amount to constructive fraud, the figure properly to have been capitalized by the Director in his income approach was the $14,870,580.00 figure shown at line 9 of his Notice of Assessed Value.

"16. The Director used, the taxpayer conceded, and the court approves a 7% capitalization rate resulting in a System Fair Market Value of $212,436,-714.00.

"17. The amount of the Director's System Fair Market Value in excess of $212,436,714.00 results from his arbitrary, unreasonable and capricious failure properly to apply the mandate of K. S. A. 79-5a04, and is fraudulent as a matter of law as to appellant for 1970 Kansas ad valorem property tax purposes.

"The application of the allocation factors used by the parties to 30% of the proper System Fair Market Value as herein found results in a Kansas Assessed Valuation of appellant's pipeline properties of $4,168,008.00, of which $2,-893,431.00 is attributable to Mobil's crude pipeline properties and $1,274,577.00 is attributable to its products pipeline properties. The amount of the Director's Kansas Assessed Valuation in excess of the amounts herein found results from his arbitrary, unreasonable and capricious failure properly to apply the mandate of K. S. A. 79-5a04, and is fraudulent as a matter of law as to appellant for 1970 Kansas ad valorem property tax purposes.

"18. The Board is deemed to have adopted the Director's value conclusions and procedure because the Board affirmed the Director's Order *in toto*. Therefore, the use of the term 'Director' throughout this memorandum opinion, or words of like import, are equally applicable to the Board's Orders.

"Judgment is hereby entered against the Director and against the Board pursuant to K. S. A. 74-2426 reducing Mobil's System Fair Market Value to $212,436,714.00, and reducing the Kansas Assessed Valuation of Mobil's pipeline properties to $4,168,008.00, of which $2,893,431.00 is attributable to Mobil's crude pipeline properties and $1,274,577.00 is attributable to its products pipeline properties. The Board of Tax Appeals is ordered to pay the costs herein.

"This memorandum opinion shall constitute the Court's judgment as well as its Findings of Fact and Conclusions of Law, and shall be effective as such judgment from and after the filing thereof by the clerk of this court."

It is abundantly clear from the above findings of fact and conclusions of law that the trial court substituted its judgment in assessing the property of Mobil subject to state assessment for that of the highest administrative tribunal in the state, the State Board of Tax Appeals. Furthermore, in doing so the assessment made by the trial court was confined to only one of the factors enumerated for consideration in 79-5a04, *supra*, (L. 1969, ch. 434, January 1, 1970). The only factor considered in determining Mobil's system fair

market value was utility operating income after deduction of all income taxes, capitalized at 7%, the capitalization rate having been conceded by the parties hereto to be proper. No consideration was given by the trial court to the other factors enumerated in determining Mobil's system fair market value.

Matters of assessment and taxation are administrative in character and not judicial, and an interference by judges with the function of administrative officers invested with the sole authority to determine valuation of property for tax purposes is unwarranted by the law. The district court could not substitute its judgment for that of the State Board of Tax Appeals. (*Builders, Inc. v. Board of County Commissioners,* 191 Kan. 379, 381 P. 2d 527, and authorities cited therein.)

The court has held that matters of valuation and assessment are administrative in character and a determination of the Board of Tax Appeals acting within its legislative authority, when fairly and honestly made, is final, and the courts will not interfere so as to usurp the Board's function or substitute their judgment for that of the Board. (*Board of County Commissioners v. Brookover,* 198 Kan. 70, 422 P. 2d 906 [Syl. ¶ 4].)

This court has held where the legislature has detailed the factors or combinations thereof to be considered by taxing officials in assessing property, those officials may not ignore any of such factors pertinent to the evaluation of specific property. To do so is arbitrary action amounting to constructive fraud regardless of the good faith of the assessor. (*Garvey Grain, Inc. v. MacDonald,* 203 Kan. 1, 453 P. 2d 59; and *Angle v. Board of County Commisioners,* 214 Kan. 708, 522 P. 2d 347.)

The foregoing assessment of Mobil's crude pipeline and Mobil's products pipeline in the State of Kansas by the trial court was erroneous.

Were the *orders of the Board of Tax Appeals* concerning the assessment of Mobil's pipeline properties in Kansas for the year 1970 unreasonable, arbitrary or capricious?

Several preliminary matters should be considered before proceeding to determine this question.

First, all of the evidence presented to the board which the trial court considered (the transcript, the exhibits and documentary matters of which the board had judicial knowledge) was documentary in form. This court has recognized that under certain cir-

cumstances when the evidence is written, documentary in character, or in the form of depositions or transcripts its duty is to decide for itself the facts established by the evidence, substantially as it would in an original case. (*Boese v. Crane*, 182 Kan. 777, 324 P. 2d 188; *Watson v. Dickey Clay Mfg. Co.*, 202 Kan. 366, 450 P. 2d 10; *Thompson v. Thompson*, 205 Kan. 630, 470 P. 2d 787; and *Northern Natural Gas Co. v. Dwyer*, 208 Kan. 337, 492 P. 2d 147.)

On the state of the record here presented this court will review the evidence to ascertain the facts and determine whether the orders entered by the board were "unreasonable, arbitrary or capricious", substantially as it would in an original action.

The second preliminary matter requiring our critical attention is the authority and power of the State Board of Tax Appeals, where an appeal is taken to the Board pursuant to K. S. A. 1970 Supp. 74-2426.

Mobil contends the Board's authority is limited in scope.

Mobil argues the Board's jurisdiction on a K. S. A. 74-2437 proceeding is "to hear appeals from the director of property valuation on the assessment of state assessed property"; that "The obvious target of this language is the Director's determination and his underlying factual and material bases therefor." To support this argument Mobil relies on *Builders, Inc. v. Board of County Commissioners*, 191 Kan. 379, 381 P. 2d 527, wherein the court described the Board (together with the County Board of Equalization) as: "These official boards are the administrative agencies provided by law to determine controversies relating to assessments". Mobil also relies upon language in *Northern Natural Gas Co. v. Dwyer*, supra, to the effect that the Board was described as "the highest administrative tribunal established by law to determine controversies relating to assessments of property for ad valorem tax purposes". Thus at the administrative level, Mobil concludes, the Board determines *controversies* relating to assessment. Consequently the authority of the Board under 74-2437, *supra*, is not the making of an assessment, but rather a review of the Director's action, viewed against the constitutional, statutory and judicial valuation requirements. Mobil pursues the argument into the article on property valuation (K. S. A. 79-1401 *et seq.*) which confers broad powers and duties on the director with regard to the "appraisement and assessment . . . of gas pipe lines and property, of all pipe lines and property" (K. S. A. 79-1404 *Fifteenth; et seq.*). Mobil contends there is no corresponding "appraisement or assessment" power or duty legislatively conferred upon the board.

The attorney general in his brief *amici curiae* says the Board's powers and duties, as intended by the legislature, should be accurately portrayed. He argues whether the Board is sitting as a State Board of Tax Appeals or as the State Board of Equalization all parties are fairly and impartially treated by the Board which has access to any and all relevant facts upon which it may render its independent determination.

On December 11, 1971, this court announced the decision in *Northern Natural Gas Co. v. Dwyer*, supra, ten months prior to the hearing by the trial court on the appeals herein. There the court had before it the construction of K. S. A. 1970 Supp. 74-2426 for the first time. The court said that despite the provisions in 74-2426, *supra*, making the Director a party to an appeal from an order of the Board, it is the *order of the Board* which is the subject of review in the district court on appeal. In reviewing the evidence before the Board the court repeatedly emphasized that it was the order of the Board which was the subject of review, and the Board's decisions being administrative in nature, were subject to limited review in the courts just as decisions of other administrative tribunals. In the opinion the court said:

". . . The Director exercises independent judgment in approving the valuation of property by personnel in his department, and the Board exercises its judgment anew and independent of the Director in approving the valuation and assessment of property. Whether the Board determines the matter of property valuation before it as an appeal board or as a board of equalization, it functions independently of the Director in matters of administrative judgment and decision. It is the order of the Board which is here for review." (p. 365.)

The legislature in authorizing an appeal to the district court from "any order determining, approving, modifying or equalizing the assessment of property for property tax purposes" (74-2426, *supra*) inferentially recognized the power of the Board in making each of the foregoing enumerated orders to give them equal status. This simply means that an order of the Board determining the assessment of property, or approving the assessment of property made by the Director, or modifying an order of the Director, has the same status as an order of the Board equalizing the assessment of property for property tax purposes.

Mobil's argument that the power of the Board is restricted by K. S. A. 74-2437b which authorizes the State Board of Tax Appeals to hear appeals from the Director of Property Valuation on

the assessment of state assessed property, is unsound. All of the statutes conferring power upon the State Board of Tax Appeals must be construed together. Reference has been made to 74-2426, *supra.* Under K. S. A. 74-2437a the State Board of Tax Appeals has the power to summon witnesses from any part of the state to appear and give testimony, and to compel such witnesses to produce records, books, papers and documents relating to any subject matter before the Board of Tax Appeals. Under K. S. A. 74-2437b the State Board of Tax Appeals has

". . . [P]ower to issue an order directing depositions of witnesses residing within or without the state, to be taken, upon notice to the interested parties, if any, in like manner that depositions of witnesses are taken in civil actions pending in the district court, *in any matter before the board.*" (Emphasis added.)

Additional powers are conferred upon the State Board of Tax Appeals by K. S. A. 74-2439. Here the State Board of Tax Appeals is given the power and duty of "Constituting, sitting and acting as the state board of equalization as provided in K. S. A. 79-1409".

When the foregoing statutes are construed together we think a clear legislative intent is indicated where an appeal is taken to the State Board of Tax Appeals from an order of the Director of Property Valuation on the assessment of state assessed property. The Board has the power and authority to exercise its judgment anew and independent of the Director in determining the assessment of state assessed property. The Board is required to make written findings of fact forming the bases of its determination and final order, and the Board's findings must be made a part of such final order. (74-2426, *supra.*) The judgment of the Board *supersedes* the judgment of the Director as to the assessed valuation of state assessed property. Therefore, it is the judgment of the Board which is subjected to the limited review of an administrative decision in an ad valorem tax case, where appeal is taken to the district court from an order of the Board.

The court's reference in *Builder's, Inc. v. Board of County Commissioners,* supra, and *Northern Natural Gas Co. v. Dwyer,* supra, to the State Board of Tax Appeals as the highest administrative tribunal established by law to determine controversies relating to the assessment of property for ad valorem tax purposes does not alter the situation. The word "controversy" was merely used to indicate the taxpayer's dispute or cause of contention with action by

the assessing officials. (See, Webster's Third New International Dictionary [1961].)

The third preliminary matter to consider is prompted by recitals made in the trial court's findings concerning regulation by federal authority of a public utility operating in interstate commerce. This issue, the regulation of earnings computed on a "rate base", was the major thrust of the public utility in attacking the assessment of its Kansas property in *Northern Natural Gas Co. v. Dwyer,* supra. The court there recognized a definite distinction between the valuation of public utility property for rate making purposes, determined pursuant to statutes applicable thereto, and the valuation of the same property pursuant to different statutes for ad valorem tax purposes. We reaffirm *Northern Natural Gas Co. v. Dwyer,* supra, without further discussion concerning apparent discrepancies in the trial court's memorandum. K. S. A. 79-503 (g), cited by the trial court in its finding No. 10, called for the capitalization of income (without deduction of income taxes) and the legislature by amendment in 1971 went back to the same concept of capitalization of income by deleting "after deduction of all income taxes" from K. S. A. 79-5a04 (4).

In determining the validity of an asessment of state assessed public utility property for ad valorem tax purposes, the essential question is whether the standards prescribed by K. S. A. 79-5a04, in determining the fair market value of the public utility's property, have been determined and considered by taxing officials, or intentionally and grossly disregarded.

We turn now to the evidence presented before the Board to determine whether the factors enumerated in K. S. A. 79-5a04 were properly considered by the Board in entering its orders herein.

In view of Mobil's limited attack which is confined to one factor, the failure of *the Director* to deduct all income taxes prior to the capitalization of utility operating income as required by subsection 4 of the above statute, we find it necessary to go into great detail concerning the evidence.

Mobil's tax agent L. C. Rogers, was the first witness called before the Board of Tax Appeals. He testified that he had prepared and filed the 1970 renditions for Mobil with the Kansas Property Valuation Department. The renditions did not show original costs or original costs depreciated for which blank spaces were provided on the forms. When asked on cross-examination why Mobil had

not filled out each line on the form, Rogers simply said it had not been done in the past. He contended the department forms did not fit Mobil's complete balance sheet data.

An employee of the Kansas Property Valuation Department, Richard Rider, testified he had a problem working the original cost approach relative to Mobil's rendition filed with the state because the returns gave him no information virtually, and that he had to take original costs from the ICC dockets which were not broken down between crude and refined lines of Mobil.

He testified the "market approach" factor was developed by using the sale of Great Lakes Pipeline to Williams Brothers which sold for 160% over original cost. After determining Mobil's original cost he multiplied it by 160% which resulted in the valuation figure of $315,339,961.00 for the market comparison of Mobil's system value. Rider did not devise the market approach but was given a formula and instructed to follow it. He used this sale on twelve oil industry pipelines in arriving at the market approach factor.

Lee Jones, supervisor of the Property Valuation Department's public utilities section, testified the department had trouble obtaining data from Mobil in past years. He described the returns as incomplete. In previous years the department took what scant information it had and did the best it could. He related that the data for the year of 1970 came from ICC filings and reports. He also indicated that for the year 1970 the department wrote for a copy of Mobil's Kansas Corporation Commission Report.

Jones on cross-examination stated the department did not ask further information from Mobil or send the return back because of the time element. He said it was too late in the year. Jones testified the Director selected the Williams Brothers' sale as a comparable company. The Director instructed Mr. Jones to capitalize gross revenues, less operation and maintenance expenses but before depreciation and deduction of income taxes, on line eight of the notices of assessment, and then to capitalize the amount on line eight less income taxes on line nine.

Mobil called Ronald F. Dwyer, the Director in 1970, as a witness on its behalf. Dwyer testified before the Board that all indicators of system value on the Mobil assessment notices were developed under his supervision; that he went over Mobil's renditions, considered the information on them plus other information in the department; that he considered every indicator of value on the assess-

ment sheet, but did not apply any mathematical weights to any one of them, and arrived at market value through the judgment process. He said he made a different system appraisal betwen the crude and products pipelines of Mobil because of the peculiar risk factors in a products line, which are greater than in a crude line. Dwyer testified consideration of the risk factor is allowed under K. S. A. 79-5a04 (5); that the capitalization rate was developed under his direction; that he exercised his judgment on system value even getting down to odd dollars; and that he recognized the risk factor by lowering the system value.

Mobil argues the Director (Dwyer) admittedly considered his line eight income approach in determining Mobil's 1970 valuation. Mobil arrived at this conclusion by saying the Director claimed he considered each of the value indicators on the notices of assessed value and, without giving particular weight to any one of them, just "arrived through the judgment process at a fair market value."

Dwyer testified each approach to value has its strengths and its weaknesses, that certainly some indicators are more reliable than others, and that some are better in some situations and not in others.

Mobil contends, when it attempted to develop the factual application of this principle with the Director before the Board, and to learn specifically the manner in which he utilized the various indicators in making his value determination, the state objected, citing *Sebits v. Jones*, 202 Kan. 435, 449 P. 2d 551, and the Board sustained the objection. Thus, it is argued by Mobil, the Board's record is devoid of any factual expression by the Director, other than the "judgment process", as to how the various indicators contributed to his value determination.

Accordingly, Mobil requests this court to reconsider its holding in *Sebits v. Jones*, supra, either to clarify or to overrule it. It is argued the court's holding, as it has consistently been applied by the Board in all of Mobil's litigation before it, provides a virtually impregnable shield for administrative constructive frauds in all but the most outrageous instances.

In *Sebits v. Jones*, supra, the plaintiffs sought to elicit information from state officials by depositions and interrogatories as to what considerations constrained them to their conclusions and decisions. The court said:

"The integrity of the administrative process requires that an officer be protected from examination or interrogatories, when attempted by a party seeking

relief from an administrative order, regarding the process by which the officer reached his conclusions." (p. 438.)

The federal courts clearly recognize the impropriety of probing the mental processes of an administrative official. (See, 2 Davis, Administrative Law Treatise, § 11.05 [1958] and the cases discussed therein.) In *Sebits*, supra, this court cited with approval *Chicago, B. & Q. Ry. Co. v. Babcock*, 204 U. S. 585, 27 S. Ct. 326, 51 L. Ed. 636, wherein the United States Supreme Court held it was "wholly improper" to cross-examine members of Nebraska's State Board of Equalization and Assessment concerning their mental processes in determining certain tax assessments. The opinion observes that the policy considerations supporting the rules which preclude examination of jurymen, arbitrators, and judges concerning the motives and influences affecting their decisions are equally applicable to administrative officials.

It has long been the rule in Kansas that the members of a jury may not be questioned, or evidence received, to show what influenced the mental processes of the jurors for the purpose of challenging a verdict. (See, *Kincaid v. Wade*, 196 Kan. 174, 410 P. 2d 333 and the cases cited therein); nor are the secret and unexpressed reasons which actuated a judge in making a decision admissible any more than are those of a juror. (*Brinkerhoff v. Bank*, 109 Kan. 700, 205 Pac. 779, reh. den. 111 Kan. 1, 205 Pac. 779.)

In *Chicago v. B. & Q. Ry. Co. v. Babcock*, supra, the court stated as a reason for protecting an administrative officer:

". . . The Board was created for the purpose of using its judgment and its knowledge. *State Railroad Tax cases*, 92 U. S. 575; *State v. Savage*, 65 Nebraska, 714, 768, 769; *In re Cruger*, 84 N. Y. 619, 621; *San Jose Gas Co. v. January*, 57 California, 614, 616. Within its jurisdiction, except, as we have said, in the case of fraud or a clearly shown adoption of wrong principles, it is the ultimate guardian of certain rights. The State has confided those rights to its protection and has trusted to its honor and capacity as it confides the protection of other social relations to the courts of law. Somewhere there must be an end. . . ." (p. 598.)

We hereby reaffirm *Sebits v. Jones*, supra, as being in accordance with the foregoing authorities.

It should be noted the Director's notices of assessed value, admitted into evidence before the Board, disclosed the requirement of 79-5a04 (4) was met. Utility operating income, after deduction of all income taxes, was specifically set forth and considered as required by the statute. This was at line number nine of the notices.

It is true line number eight in the notices also set forth the utility operating income before deduction of income taxes. But there is nothing in the statute (79-5a04) which prohibits its consideration. In fact, 79-5a04 (5), *supra*, authorizes consideration of such other information or evidence as to value as may be obtained that will enable the property valuation department to determine the fair market value of the property of such companies. It is readily apparent capitalization of Mobil's 1970 utility operating income, before deduction for income taxes, results in a valuation in the comparative area of the market comparison on line seven of the notices. This was based upon the actual sale of a similar company in the open market.

At the hearing before the Board Dwyer was never examined by Mobil concerning his selection of the sale of Great Lakes Pipeline to Williams Brothers, and his use of that sale in arriving at his market value indicator; nor was Dwyer recalled by Mobil for re-examination after Dwyer's staff appraisers explained they had used this sale at Dwyer's direction, and after they also explained how they had used it.

The admonition of the legislature in the fore part of 79-5a04, *supra*, is that the valuation of the property of all public utilities as defined by the act "shall be the *fair market value* thereof and what such property would sell for under conditions which usually govern the sale of property in that character." (Emphasis added.) When the factors to be determined by the valuation officials as set forth in the statute are analyzed, it is apparent they are destined to be somewhat inconsistent. For example, original cost is one factor for consideration while another factor is original cost less depreciation, or replacement cost new less depreciation. Obviously, the determinations of value for these factors will not be the same or consistent with each other.

The stringent requirements of the legislature in K. S. A. 79-503 (L. 1963, ch. 460, later amended by L. 1965, ch. 515) when *Garvey Grain, Inc., v. MacDonald*, 203 Kan. 1, 453 P. 2d 59, was decided, requiring assessing officials to determine "justifiable value" in assessing real property (see, *Northern Natural Gas Co. v. Dwyer*, supra), have been relaxed by the legislature in amending the statutes in several particulars.

First, by K. S. A. 79-501 (L. 1969, ch. 433) assessors are now required to determine the "fair market value" in money of each

parcel of real property; and public utilities are classified separately for assessment purposes under K. S. A. 79-5a01 (L. 1969, ch. 434, § 1). Assessors are now required to value the property, both real and personal, tangible and intangible, of all public utilities at the "fair market value" thereof pursuant to K. S. A. 79-5a04 (L. 1969, ch. 434 § 4). "Fair market value" has a well defined meaning in our free economy and in our case law, whereas "justifiable value" was a creature of statute having a precise statutory definition. The legislature defined "fair market value" in K. S. A. 79-503 (L. 1969 ch. 433, § 10) in substantially the same language as the court has defined it and as it is generally understood and accepted. The definition reads:

"Fair market value in money shall mean the amount of money that a well informed buyer is justified in paying and a well informed seller is justified in accepting, assuming that the parties thereto are acting without undue compulsion and that the property has been offered at the market place for a reasonable length of time. . . ."

Second, the statutory factors to be considered in determining "justifiable value" for a public utility were more numerous and more precise than are the statutory factors to be considered in determining the "fair market value" of a public utility. Subparagraph "(5)" of 79-5a04, *supra,* permits consideration of:

"Such other information or evidence as to value as may be obtained that will enable the property valuation department to determine the fair market value of the property of such companies."

Third, the concluding paragraph in K. S. A. 79-503 (L. 1965, ch. 515) specifically stated:

"It shall be unlawful to determine justifiable value of real property in any manner other than authorized and provided for in this section. . . ."

This mandate was dropped from K. S. A. 79-503 (L. 1969, ch. 433, § 10) and was not included in K. S. A. 79-5a04 (L. 1969, ch. 434 § 4) requiring the valuation of public utility property at fair market value for assessment purposes. The legislature in K. S. A. 79-503 (L. 1969, ch. 433, § 10) specifically states:

"The appraiser or assessor in arriving at fair market value in money *may use different factors* in determining the classifications best suited to arrive at fair market value in money as defined in this section. . . ." (Emphasis added.)

Another point to be observed is that the legislature in 1971 amended 79-5a04 (4) by deleting "after deduction of all income taxes". It is argued by the Director public utilities are the only

taxpayers in Kansas entitled to this preferential treatment—the capitalization of utility operating income after deduction of all income taxes. Consideration of this factor was permitted by the legislature for public utilities for the year 1970 only. Other taxpayers are not entitled to any deduction for income taxes prior to the capitalization of net income. (See, K. S. A. 79-503 [g], L. 1965, ch. 515, § 1, and L. 1969, ch. 433, § 10.)

While the Director in the case at bar testified before the Board that he considered all of the indicators of value prescribed by the legislature in 79-5a04, *supra*, it was not the function of the district court on appeal from the orders of the Board to ascertain whether the Director had done so, but whether the Board, after hearing all of the evidence and making findings of fact, had entered orders which were unreasonable, arbitrary, or capricious.

Each of the orders of the Board, which are the subject of appeal in this action, indicate that the Board determined the assessment of Mobil's property independently of the determination made by the Director. This is disclosed by the findings of the Board in each of its orders. The Board states in its finding concerning the crude pipeline: "That based on the evidence presented the correct assessed valuation of the appellant's properties within Kansas is $1,797,650.00, the same as was determined by the Kansas Director of Property Valuation." The Board's finding concerning the products pipeline is substantially the same as the one above, except the valuation is $4,150,985.00.

We find the orders of the Board dated August 25, 1970, appealed to the district court and the subject of appeal to this court, were not unreasonable, arbitrary or capricious. The orders were lawful in all respects, and the Board ascertained and determined the applicable statutory standards which were applied in determining the fair market value of Mobil's Kansas pipelines which were subject to state assessment. The orders were based upon and in accordance with the evidence before the Board. The validity of the orders is not impaired by the entry at line number eight, under the heading "III. Income Approach", in the notices of assessed value sent by the Director to Mobil, all of which was fully aired in the hearing before the Board. A thorough review of the record discloses no evidence that *the Board* has acted under the influence of improper motive, or acted in an unreasonable, arbitrary or capricious manner. The *Board's action* in the valuation and assessment of Mobil's

Kansas pipeline properties falls well within the realm of administrative judgment.

The Director requests this court to remand the case to the State Board of Tax Appeals for further consideration in connection with the 1970 assessment of Mobil's Kansas pipelines on the ground of newly discovered evidence. In framing the issues the Director states:

"Did the Court err in denying the state's motion for a new trial when undisputed record evidence was before the Court, attached to the motion and verified, which showed that Mobil had inaccurately reported its inventory of property to the state in 1970 and the cost of that property, which records had been discovered in Mobil's 1972 proceedings before the Board of Tax Appeals?"

The Director says in his brief it is the judgment of the court rendered October 18, 1972, and the court's subsequent order of December 6, 1972, overruling the state's motion for new trial, to open findings, and enter judgment remanding these cases that give rise to this appeal. The Director contends these judgments conflict with administrative procedure and law, that the court cannot fix the value of property for the purpose of taxation, that the cases should have been remanded to the Board of Tax Appeals, particularly when the court has verified record evidence that the Board is litigating currently the subject matter before the court in subsequent proceedings and that the Board could make new findings that would be helpful to the court to render a just decision.

We are informed by the parties that Mobil's dispute with the Director's valuation and assessment of its pipeline properties in the 32 counties of Kansas covers a span of four years, from 1970 to 1973 inclusive. A total of 256 protest cases filed pursuant to K. S. A. 79-2005 are pending in the district courts of the various counties and appeals to the State Board of Tax Appeals from the Director's assessment of Mobil's pipeline properties for the years 1971, 1972 and 1973 are pending before the board.

The Director states in his brief:

"A case was filed on August 27, 1973, in the District Court of Shawnee County, Kansas, Case No. 123,016 titled Mobil Pipe Line Company v. Harold C. Rohmiller, Director, and the five members of the Board of Tax Appeals. This was a petition for an injunction against the Order of that Board dated July 24, 1973, directing a limited audit or study of Mobil's books and records to get inventory, cost and income information in the determination of the assessed value of Mobil Pipe Line for the years 1971 and 1972. These are

the very cases mentioned in the Lyon County case herein appealed. The Order directs an auditor to check Mobil's books, to secure correct annual original cost figures from 1968 through 1972, because the Board has considered such figure a 'bench mark' appraisal approach, to get the Mobil record information about annual additions and retirements so that the Board can perform a reproduction cost less depreciation by 'trending' original cost, and some income information from Mobil's books which the Board deemed necessary. Mobil would deny the Board this vital information. The relevancy is that Mobil's 1970 tax rendition accuracy is involved."

This court is requested to take judicial notice pursuant to K. S. A. 60-409 (c) of the above case now pending in the Shawnee County District Court.

Assuming the Director has complied with the statute and this court is required to take judicial notice of the above proceeding, it does not follow that this court must remand the case to the Board of Tax Appeals. In our opinion the record here submitted is insufficient to warrant a remand of this case to the Board of Tax Appeals concerning the 1970 ad valorem assessment of Mobil's Kansas pipeline properties.

If the Director has discovered fraud on the part of Mobil in making its renditions for the year of 1970 to the Kansas Property Valuation Department, the Director has an adequate remedy. (See, K. S. A. 79-1427.)

The judgment of the lower court is reversed with directions to approve the orders of the State Board of Tax Appeals assessing Mobil's Kansas pipeline properties for the year 1970.