No. 49,669

CITIES SERVICE OIL COMPANY, a corporation, *Plaintiff,* v. THE BOARD OF COUNTY COMMISSIONERS OF RICE COUNTY, KANSAS, DALE O. EVANS, CECIL J. JOHNSON, and HOWARD HODGSON, As Members of Said Commission and Their Respective Successors in Office; JEAN WILLIAMS, As County Treasurer of Rice County, Kansas, and Her Successor in Office, *Defendants.*

(578 P.2d 718)

Opinion filed May 6, 1978.

*Glenn D. Cogswell,* of Topeka, argued the cause and *Victor K. Kulp,* of Tulsa, Oklahoma, was with him on the brief for plaintiff.

*James G. Kahler,* county attorney, argued the cause and was on the brief for defendants.

*Donald R. Hoffman,* assistant attorney general, argued the cause and *Curt T. Schneider,* attorney general, and *Clarence J. Malone,* assistant attorney general, were with him on the brief for the State of Kansas.

*Robert E. Duncan, II,* of Topeka, was on the brief *amicus curiae* for The State Board of Tax Appeals.

The opinion of the court was delivered by

HOLMES, J.: This is an original action in mandamus filed in this

court pursuant to Article 3, Section 3 of the Constitution of the State of Kansas and K.S.A. 60-801, *et seq.* We accepted jurisdiction.

The State Board of Tax Appeals was granted leave to file an *amicus curiae* brief and the State of Kansas was granted leave to enter an appearance by and through the Attorney General for and on behalf of the Director of Accounts and Reports.

The facts are not in dispute.

Plaintiff, Cities Service Oil Company, filed this action against the Board of County Commissioners of Rice County, Kansas, and the County Treasurer of Rice County, Kansas, seeking an order directing the County Treasurer to refund ad valorem taxes paid under protest by Cities Service.

Plaintiff paid ad valorem taxes for 1974 on production from certain oil and gas leases in Rice County, Kansas, and at the same time filed a written statement of protest together with an application for a hearing before the State Board of Tax Appeals as required by K.S.A. 79-2005.

No questions are raised about the procedural aspects of plaintiff's payment of the taxes and the subsequent proceedings before the Board. The Board, after a proper hearing, issued an order reducing by 15% the 1974 appraised valuation of the plaintiff's production from certain oil and gas leases and ordered the Rice County Treasurer to recompute the plaintiff's 1974 tax liability and refund any excess taxes paid by plaintiff.

The order of the Board provided, in part:

"It is, therefore, by the majority of the members of the State Board of Tax Appeals of the State of Kansas, considered and ordered that the officials of Rice County, Kansas, reduce the 1974 appraised valuation on the protestant oil production excluding equipment by 15%. The Rice County Treasurer is ordered and directed to recompute the protestant's 1974 tax liability following the adjustments hereinbefore ordered by the Board. If all of the 1974 taxes were previously paid, then *the Rice County Treasurer is ordered and directed to refund to the protestant forthwith any excess taxes collected prior to the adjustment hereinbefore ordered by this Board.* . . ." (emphasis added)

In effect, the County Treasurer was directed to reduce the assessed valuation of plaintiff's production by 15%, recompute the 1974 ad valorem taxes paid by plaintiff and make an appropriate refund of the amount of overpayment. The total amount to be refunded was $1,034.00.

Plaintiff made demand on defendant Jean Williams as County

Treasurer for refund of the protested taxes and on or about September 22, 1976, defendants issued a check in the sum of $284.56 to Cities Service, leaving a balance of $749.44 unpaid. Defendants refused to refund the additional amount alleging plaintiff's tax payments had already been disbursed to other taxing districts and only the share of the county in the sum of $284.56 could be refunded by the county. Plaintiff contends it is the duty of the defendants to refund the full amount and to make appropriate adjustments with the other taxing districts which received a portion of the original protested taxes paid by plaintiff.

On the individual leases involved in this appeal, the shares of the various taxing districts other than Rice County, Kansas, ranged from $0.09 to $307.62 and included:

South Central Kansas Library Systems;
Unified School District #401;
Unified School District #444;
Unified School District #328;
Rice County Rural Fire Department;
Upper Little Arkansas River Watershed Joint District #95;
Victoria Township;
Kansas Center Cemetery;
Pioneer Township; and
Center Township.

These taxing districts have indicated a willingness to make the appropriate refund to plaintiff, upon demand, and three of them have actually tendered checks to Cities Service. Cities Service is holding those checks along with the one from the county pending the outcome of this action. In addition to the foregoing local taxing districts, a portion of the protested taxes subject to refund was paid or credited to the Director of Accounts and Reports of the State of Kansas, for the Kansas Educational Building Fund and the State Institutions Building Fund.

It is the position of plaintiff that, having paid its taxes in full to the County Treasurer of Rice County, Kansas, the overpayment as determined by the State Board of Tax Appeals should be refunded in toto by the Rice County Treasurer.

Defendants assert K.S.A. 1975 Supp. 79-2005 limits the refund by the county to that portion of the protested taxes retained by the county and further that it is plaintiff's obligation to look to the other taxing districts for a refund of each district's proportionate share of the overpayment. The Board, in its brief *amicus curiae,* and the State of Kansas take the position, along with plaintiff, that the entire refund should be made by the county and the county should then make appropriate adjustments with the individual taxing districts and the State.

We agree with plaintiff's position.

The principal issue in this case is the proper application of K.S.A. 79-2005, when considered with other statutes, the orders issued by the Board and certain administrative procedures adopted by the Department of Administration. Prior to 1971, 79-2005 directed the county treasurer in the event of payment of taxes under protest to impound in a separate fund the taxes which were protested. In certain instances, this was felt to work a hardship on the individual taxing districts and in 1971 the statute was amended twice to provide, among other things, that the county treasurer disburse the taxes protested without impounding any portion thereof. The first 1971 amendment provided the county treasurer should make the refund of successfully protested taxes and the second 1971 amendment provided the state or governing body of the taxing district should make the refund. The statute was again amended in 1974 and now appears as K.S.A. 79-2005. Insofar as this appeal is concerned the statute provides, with reference to refunds, as follows:

"No action shall be brought or maintainable in any court for the recovery of any taxes paid under protest unless the same is commenced within thirty (30) days after the filing of such protest with the county treasurer, or, in case application shall have been filed with the board as hereinbefore set out, unless the same is commenced within thirty (30) days after the date the board mailed its order on such protest to such taxpayer. *In the event no such action is commenced within such thirty-day period, the county treasurer, state or governing body of the taxing district,* any portion of the levies of which are protested *shall, if the taxpayer is entitled to the refund of any such taxes paid under protest,* as soon thereafter as reasonably practicable, *cause said tax money to be refunded to the taxpayer entitled to receive the same in accordance with the order of the board issued thereon;* and if such order directs the refund of any taxes levied by the state which were paid under protest, the director of accounts and reports shall refund said tax moneys out of the fund or funds receiving the same by drawing his or her warrant on the state treasurer in favor of such taxpayer.

"Whenever any taxpayer shall be entitled to recover any taxes paid under protest, other than taxes levied by the state, the governing body of the taxing district or districts to which such tax moneys were disbursed shall, as soon as is reasonably practicable, provide for the refund thereof out of the fund or funds receiving the same. . . ." (emphasis added)

The Board, in its brief, asserts its position in relation to K.S.A. 79-2005 as follows:

"The relevant part of that statute provides, as concerns the manner in which this Board directs that a refund be made:

'[T]he County Treasurer, State, or governing body of the taxing district . . . shall, . . . cause said tax money to be refunded to the taxpayer entitled to receive the same *in accordance with the Order of the Board issued thereon;* (emphasis provided).'

"Simply stated, if the Board directs all affected taxing districts to refund their *pro rata* share, so it shall be done upon directive of the Board. If the Board directs that the County, singularly, make the refund, so it shall be done upon directive of the Board.

. . . . . . . . . . . . . . . . .

"The trigger of the mechanism determining which taxing body or bodies shall make the refund is the Board's Order."

Under the provisions of K.S.A. 79-1411a the county is declared to be the governmental unit charged with the primary responsibility for the administration of all laws relating to the assessment, review, equalization, extension and collection of real and personal property taxes, except as may be otherwise provided by law. These duties also imply that the county bear the primary responsibility for the refund of taxes paid under protest when they have been illegally or erroneously assessed and subsequently collected by the county. The taxpayer makes payment of one sum to the county and if it is determined that the taxpayer is legally entitled to a refund of all or a portion of such payment there is no reasonable basis for the taxpayer to be put to the inconvenience, time, expense, etc. of securing the refund in small portions from several different taxing districts. Under our system of law the function of government is to serve its citizens and wherever possible make the burdens on the public simpler rather than to compound them with unreasonable rules, regulations and red tape. All government officials, including the county treasurer, work for the public, not vice versa, although in this day and age the members of the general public probably find that hard to believe.

K.S.A. 79-2005 provides alternative procedures which may be utilized to effect the refund of taxes determined to be due the taxpayer. In a proper case it may be that the taxpayer is required to obtain the refund from the county, the individual taxing districts and the state rather than solely from the county. However, such a procedure should be avoided if at all possible. The statute makes both procedures available at the discretion of the Board.

The State Board of Tax Appeals is the highest administrative tribunal in the state and is charged with the ultimate authority, subject to judicial review in a proper case, in the administration of matters of assessment and valuation. *Mobil Pipeline Co. v. Rohmiller,* 214 Kan. 905, 522 P.2d 923 (1974). The determination

of the method to be utilized in the refund of taxes paid under protest is a proper administrative function of the Board to be carried out according to its orders.

As a practical matter, the refund due plaintiff can be accomplished by the defendants without any great inconvenience to the defendants or the individual taxing districts. At any given time the county treasurer usually has on hand undistributed funds of the individual districts and the refund may be facilitated by the mere entry of accounting entries on their respective books. If there are not such funds available in the hands of the county treasurer the same are readily available from the taxing districts. We view this as a proper function of the county treasurer in carrying out the duties of the office.

Plaintiff in its brief cited *Hodgins v. The Board of County Comm'rs,* 123 Kan. 246, 255 P. 46 (1927); *Chicago, R.I.& P. Rly. Co. v. Ford County Comm'rs,* 138 Kan. 516, 27 P.2d 229 (1933); and *Kaw Valley Drainage Dist. v. Zimmer,* 141 Kan. 620, 42 P.2d 936 (1935) as authority that the county treasurer should make the refund. Defendants seek to distinguish those cases on the basis that in the cases cited by plaintiff the county officials made the erroneous or illegal assessment while in the present case that is not so. In the instant case the county officials followed the formulas and guides set forth in the assessment manual of the Director of Property Valuation. (K.S.A. 75-5105a and K.S.A. 79-1412a.) It was the Board of Tax Appeals which determined the manual prepared by the Director of Property Valuation did not establish a proper basis for the valuation and assessment in this case. The record reflects there was no erroneous or wrongful act by the Rice County officials in the original assessment and valuation of plaintiff's production. We do not feel that the finding of fault in the improper assessment of the plaintiff's property is a controlling factor in the determination of who should undertake the duty of making the refunds ordered by the Board.

What has been said about the refund of a portion of plaintiff's taxes received by the individual taxing districts is equally true of that portion of the overpaid taxes which were distributed to the state. The Department of Administration has adopted an administrative procedure which allows the state's share of the refund to be made by the county treasurer. The recommended administrative procedure is explained, in part, by the Director of Accounts and Reports in its pleadings:

"Upon issuance of an order showing that the taxpayer is entitled to a refund of any taxes paid under protest, the statute (K.S.A. 79-2005) provides that the State or governing body of the taxing district shall cause the tax money to be refunded to the taxpayer.

"Inasmuch as the taxpayer both originally paid his taxes and filed his notice of protest with the County Treasurer, it would seem likely that the taxpayer will look to the County Treasurer for the full amount of the refund which might have been subsequently ordered. Secondly, the County Treasurer is the only official that has records of payment, taxpayer by taxpayer, to verify that the taxes were actually paid. In the absence of such payment record, the State or some governmental subdivision by error could be required to refund taxes never actually received. Therefore, it is our position that the County Treasurer should handle all tax refunds.

"Since the County Treasurer collects and distributes the State levied taxes to the Educational Building Fund and the State Institutions Building Fund ledgers, the portion of any protested tax refund applicable to the state levy could be charged back against those ledger accounts. This would have the same effect on the State accounts as if the original tax monies had never been distributed. By using this procedure, the County Treasurer would be able to satisfy the taxpayer with the full refund as ordered. This would eliminate the taxpayer having to look to another governmental unit for a small portion of his refund."

The foregoing procedure has been utilized throughout the state under the broad power and duties of the Director of Accounts and Reports and the Department of Administration to formulate a statewide system of centralized accounting and fiscal procedure. (K.S.A. 75-3728.) The fiscal procedure implemented by the Director for refunding protested tax money out of the local county "state fund" does follow the language of K.S.A. 79-2005 in that the refund is made "out of the fund or funds receiving the same. . . ."

In addition to an order directing the County Treasurer to make a refund of the entire amount of the overpayment of taxes, plaintiff seeks attorney fees and costs, pursuant to K.S.A. 60-802(c).

"Attorney fees in a mandamus action will be allowed only where the refusal of the public official, commission or board to perform the duty imposed by law was unreasonable under all the facts and circumstances." *Seaman Dist. Teachers' Ass'n v. Board of Education,* 217 Kan. 233, Syl. 7, 535 P.2d 889 (1975).

Considering the language of K.S.A. 79-2005, we cannot say the action of the defendants in the instant action was unreasonable.

We therefore conclude that a writ of mandamus should issue and the defendants are ordered and directed to forthwith refund

the overpayment of taxes, including those distributed to other taxing districts and the state. Plaintiff's petition for attorney fees is denied.

It Is So Ordered.