No. 48,668

LYON COUNTY, KANSAS; R. P. FELKNER, ALEX MURPHY and GAIL
GASCHE, Members of the Board of County Commissioners of
Lyon County, Kansas; ROSEMARY SPALDING, County Clerk, Ex-
Officio County Assessor of Lyon County, Kansas; LULA HUNT,
County Treasurer of Lyon County, Kansas, and Their Succes-
sors in Office, *Appellees,* v. IOWA BEEF PROCESSORS, INC., *Ap-
pellant.*

(580 P.2d 1300)

Opinion filed June 10, 1978.

*Gerald J. Letourneau,* of Colmery, McClure, Funk, Letourneau & Entz, of
Topeka, argued the cause and *Richard R. Funk* was with him on the brief for the
appellant.

*Elvin D. Perkins,* of Perkins, Guy & Rulon, Chartered, of Emporia, argued the
case and was on the brief for the appellees.

The opinion of the court was delivered by

MCFARLAND, J.: This action involves the payment of 1974 ad
valorem taxes on a manufacturer's inventory pursuant to K.S.A.
79-1005, which taxes were paid under protest by appellant-tax-
payer, Iowa Beef Processors, Inc., (hereinafter referred to as IBP).
The State Board of Tax Appeals (hereinafter referred to as Board)
ordered a refund of the protested taxes. Lyon County appealed
the order to the district court which reversed and remanded the
matter back to the Board. IBP appeals from the judgment of the
district court.

IBP, a manufacturer, operates a beef slaughtering and process-
ing plant in Emporia. The entire plant is a bonded licensed
warehouse. IBP filed its rendition of personal property for 1974
with the county clerk-assessor of Lyon County on Form CV2R.
The only part of that rendition in controversy here is that relating
to inventory. The 1974 inventory rendition was based on the

average inventory of the preceding year (1973) as required by K.S.A. 79-1005. IBP based its rendition on average daily gross sales; then exempted 96.8% of that amount as the percentage moving in interstate commerce pursuant to K.S.A. 79-304 (Weeks 1969) (now K.S.A. 79-201f), the "freeport exemption."

The county clerk-assessor refused to accept IBP's rendition. The county claimed the total inventory was $1,225,882.00 with a tax assessment of $38,239.37. The county later claimed the correct figures are $3,516,022.40 and $109,676.69, respectively, but does not seek this higher figure. IBP claims the inventory value, after exemption, is $85,126.00 with a tax assessment of $2,655.39. IBP paid the difference, $35,583.98, under protest.

The Board found that IBP came under the freeport exemption and only 3.2% of the inventory was taxable in Kansas. It found that the gross sales reflected the entire inventory and that there was never anything in process. It concluded that the "single average day" met the average monthly value of K.S.A. 79-1005 and was correctly rendered by using one average day's gross sales. It ordered the tax liability reduced by $35,583.98, the amount paid under protest.

The district court also found that 96.8% of the processed items were sold out of Kansas. But it found that the Board's determination was unreasonable, arbitrary, and capricious. It found that there was processing involved and also that the Board incorrectly used "one day's sales" as "one day's inventory."

The two questions before the Board were: (1) determination of the correct method of reporting IBP's 1974 manufacturer's inventory as required by K.S.A. 79-1005; and (2) determination of correct part or portion of 1974 IBP manufacturer's inventory subject to exemption under the freeport provisions of K.S.A. 79-304 (Weeks 1969). While appellant designates six points (with subpoints) on appeal, they all go to the basic question of whether the district court was in error in reversing the order of the Board making those two determinations. The Board's Order is as follows:

"Now, on this 13 day of January, 1976, the above captioned matters come on for consideration and decision before the State Board of Tax Appeals of the State of Kansas.

"Previous hereto these matters were extensively heard by the Board. The Board finds and notes that a Pre-Trial Conference was held on these matters on February 13, 1975; that an Evidentiary Hearing was held on these matters on July 14, 1975;

that suggested findings of fact and conclusions of law were submitted on behalf of both of the parties; that final oral arguments were heard by this Board on October 30, 1975; and, that subsequently thereto memorandum briefs were filed by each party.

"The Board finds and notes that appearing in these proceedings for the taxpayer corporation were Richard R. Funk and Gerald J. Letourneau, Attorneys, and appearing on behalf of Lyon County, Elvin D. Perkins, Attorney.

"The Board, after having reviewed all of the exhibits submitted, the transcript of the proceedings, all of the files and the evidence submitted, and all testimony and proceedings before it; after having considered final arguments and briefs submitted; and, after being fully advised in the premises, now finds as follows:

"1.    Iowa Beef Processors, Inc., also herein referred to as IBP, is a corporation engaged in slaughtering and processing beef at Emporia, Kansas. Also Denison & Hide Company, a subsidiary of IBP, operates a hide facility within the Emporia, Kansas plant. Denison & Hide Company is not assessed separately and the valuation and assessment of this property is included in the valuation and assessment of IBP.

"2.    That by stipulation of the parties, docket Nos. 3650-4 and 1231-5 were consolidated for a hearing and Order and cover the protest of the first and second half 1974 taxes paid by IBP, which taxes were levied and assessed against the inventory of IBP at its Emporia, Kansas plant for the tax year 1974.

"3.    The question before this Board is the determination of the correct 1974 inventory valuation of Iowa Beef Processors, Inc., also known as IBP, of its personal property inventory located in its plant at Emporia, Lyon County, Kansas, as required by K.S.A. 79-1005 and related statutes. In this regard, the Board notes both IBP and Lyon County agree that there are two questions involved; that is, the determination of the correct method of reporting IBP's 1974 manufacturer's inventory, and (2) the determination of the correct part or proportion of the 1974 IBP manufacturer's inventory subject to exemption under the freeport provisions of K.S.A. 79-304. The Board agrees that these are in fact the questions to be determined and finds that the determination of these questions will be made by analysis of all the facts and circumstances involved in this Protest and the application of the appropriate Kansas Statutes to the factual findings.

"4.    Lyon County, also known as the County, claims, for the first time before this Board, that the correct 1974 inventory valuation of IBP is $3,516,022.40; which computes to $109,676.69 in 1974 ad valorem taxes. The County, however, has not and does not seek to obtain ad valorem taxes on IBP 1974 manufacturers inventory over and above an amount based on a total inventory valuation of $1,225,882.00 resulting in an assessed 30% value of $367,764.00, resulting in a levy of $38,239.37. IBP paid $35,583.98 of the said levy under protest for the year 1974. IBP claims that the correct 1974 inventory valuation, based on an average day's inventory after applying their freeport exemption, is $85,126.00 or an assessed 30% valuation of $25,538.00, which when applied to the Emporia, Lyon County, Kansas tax rate of 10.3978, results in a 1974 ad valorem assessment of $2,655.39 for the 1974 manufacturers inventory taxes. IBP therefore is claiming a refund of $35,583.98, being the difference between the levied, $38,239.37, and the amount it admits due Lyon County, $2,655.39.

"5.    The Board finds that IBP is a manufacturer as contemplated and defined in K.S.A. 79-1005 for the year 1974.

"6. The Board further finds that for the tax year in question IBP's 1974 manufacturers inventory is under the canopy of the freeport provisions of K.S.A. 79-304. The freeport provisions as found in K.S.A. 79-304 for the year in question were by the Kansas Legislature placed in 79-201 effective for the tax years commencing after December 31, 1974, as provided in Senate Bill 30, 1975 Session Laws, Chapter 495, new section 7. Although this current amendment does not apply to the instant tax year 1974, the Board notes that the legislative intent continues to treat the freeport provisions as an exemption, although perhaps now more clearly expressed with respect to manufacturers. The Board therefore concludes that with respect to the freeport exemption, IBP has met the requirements of the statute for exemption of a portion of its 1974 manufacturers inventory of which 96.8% is exempt and 3.2% is taxable to Kansas. In this regard, the Board adopts and finds as correct IBP's Suggested Findings of Fact, Numbers 2, 15, 16 and 17 [which are as follows:

'2. It was stipulated that the Taxpayer is a manufacturer. . . .

'15. That the gross sales at the Emporia, Kansas plant reflected the entire inventory. . . .

'16. That the Emporia, Kansas plant does not feed cattle . . .; that there is never anything in process . . .; normally there would be no live cattle in the pen at Emporia, Kansas after the second shift. . . .

'17. That all hides are handled through Denison Hide Company, a subsidiary of IBP, and all of them are shipped to points outside of Kansas. . . .']

and Suggested Conclusions of Law, Numbers 2, 3, 4 and 5 [which are as follows:

'2. That IBP operated a Bonded Warehouse and storage area at Emporia, Kansas for the period of January 15, 1973, to December 31, 1974.

'3. That all hides from the Emporia, Kansas plant were shipped outside of Kansas in 1973, and under the provisions of K.S.A. 79-304, Subsection (b) (the Freeport Act), are 100% exempted from ad valorem taxation in Kansas.

'4. That 96.8% of all customer sales by IBP from the Emporia, Kansas plant in 1973 were in interstate commerce and under the canopy of the Freeport Act, and the Taxpayer is entitled to exempt 96.8% of all customer sales from Kansas ad valorem taxes.

'5. That 3.2% of all customer sales by IBP from the Emporia, Kansas plant for the calendar year 1973 were to Kansas customers, and are subject to Kansas ad valorem taxes.']

"7. Now turning to the question of what is the correct inventory value subject to the freeport canopy, we find that we must first determine what was the correct method to arrive at inventory as prescribed by K.S.A. 1974 Supp. 79-1005. In this regard we note that 79-1005 provides for the ascertainment of an average *monthly* value of inventory. However, where inventory is not static, and rapidly turns over, day by day, as in the case instantly before us, this Board feels that it would be substantial error to value and assess the property for an accumulative average of 30 days of finished product. We therefore are of the opinion and conclude that in this instance a manufacturers inventory for ad valorem tax purposes must be determined to be a single average day within the assessment period. The Board further finds that the single average day as contemplated by K.S.A. 79-1005 was

correctly rendered by the taxpayer's agent Mr. Cloonan by rendering one average day's gross sales during 1973. In this regard the Board adopts and finds as correct IBP's suggested findings of fact No. 3, 4, 6, 7 and 8 [which are as follows:

'3. Harrie J. Cloonan, an appraiser and consultant of Frontenac, Kansas, was employed by IBP in 1974 to prepare and file its 1974 commercial personal property statement, including the completion of the CV2R statement, together with the applicable CV2R Supplements. . . .

'4. Mr. Cloonan prepared the inventory portion of IBP's 1974 commercial personal property statement by rendering one average day's gross sales during 1973. . . .

'6. That at the Emporia, Kansas plant of IBP there is an average roll-over period of three days from the time the beef arrives at the plant until it is on the loading dock. . . .

'7. That one day's average gross sales figures was rendered rather than for the three-day roll-over period because gross sales include raw materials, labor, overhead and other production factors, resulting in a greatly inflated valuation figure (3 times) for ad valorem tax purposes. . . .

'8. That IBP's commercial personal property tax rendition was prepared in accordance with Kansas Statutes, and as construed by a Directive and Memorandum of the Kansas Property Valuation Department dated January 21, 1971. . . .']

"8. The Board further finds and adopts suggested conclusions of law of IBP No. 6 [which is as follows:

'6. That IBP's 1974 rendition of its commercial personal property in Lyon County, Kansas, including its inventory based on daily average 1973 gross sales, was a proper and correct way to make its rendition, and is complete in all respects.']

that IBP's 1974 rendition of its commercial personal property in Lyon County, Kansas, including its inventory based on daily average 1973 gross sales, was the proper and correct way to make its rendition, and is complete in all respects. The Board wishes to comment on the county's approach to method. The county, by the record, admits that the amended inventory as arrived at by the County Assessor was done on an incorrect approach. The Board further notes that in the county's second approach to value that yet a different method was used, involving an approximation factor of 25% for inventory work in process. While we have carefully considered the county's contentions, such approximations that are so indefinite and uncertain as to their application to the facts are not of any great help to this Board.

"9. The Board therefore finds and concludes that the 1974 inventory rendition of its personal property at Emporia, Lyon County, Kansas is correct and is in accordance with the applicable provisions of the Kansas Statutes Annotated. The Board further finds and concludes that IBP has complied with the provisions of K.S.A. 1974 Supp. 79-1005, K.S.A. 79-301 and K.S.A. 79-304 with respect to the 'freeport exemption,' and all other statutes applicable thereto.

"10. The Board therefore finds and concludes that the 1974 valuation placed on IBP merchandise manufacturers inventory located in Lyon County, Kansas is not correct and in order that said property will be correctly valued according to the applicable provisions of the Kansas Statutes Annotated for 1974, the value is fixed at $85,126.00 or an assessed 30% valuation of $25,537.00.

"IT IS, THEREFORE, BY THE STATE BOARD OF TAX APPEALS OF THE STATE OF KANSAS, CONSIDERED AND ORDERED that the officials of Lyon County, Kansas correct their books and records accordingly to conform with the findings of this Board. In this regard the protestant's 1974 tax liability is ordered reduced in the amount of $35,583.98 which is to be immediately refunded to the protestant."

The district court's memorandum is as follows:

*"Findings of Fact*

"1. On June 7, 1976, Lyon County, Kansas, hereinafter referred to as appellants, appeared by Mr. Elvin Perkins and Mr. R. P. Felkner; Iowa Beef Processors, Inc., hereinafter referred to as appellee, appeared by Mr. Richard R. Funk and Mr. Gerald J. Letourneau.

"2. This matter arises out of the manner in which the rendition was made by appellee in 1974 and 1973 'inventory' for tax purposes. Appellee used the same proceeding in the prior year, basing the 'inventory' on one day's average sale.

"3. In January of 1974, appellee met the requirements of a bonded warehouse and contend that they are under the provisions of K.S.A. 79-304 (Freeport Law).

"4. The County Assessor, in 1974, did not accept the rendition made by appellee and made her own assessment. Appellee paid the assessed tax under protest.

"5. This matter has been heard, after extensive research and discovery and several pre-trial hearings by the Board of Tax Appeals, who found generally for the appellee and against the appellants.

"6. All taxes paid in 1974 were protested by appellee and the cases are consolidated herein, and the protested sum was ordered repaid to appellee.

"7. Appellants have appealed to this Court.

"8. It is agreed that appellee is a manufacturer (K.S.A. 79-1005) who was required to list property for taxation (K.S.A. 79-303) subject, however, to K.S.A. 79-304 (which then contained the provisions now set forth in K.S.A. Supp. 79-201f).

"9. It appears that about 96.8% of the appellee's Emporia, Kansas, plant processed items were ultimately sold outside of Kansas, leaving 3.2% taxable in Kansas.

"10. The Board of Tax Appeals order, herein designated as an exhibit by appellee will hereafter be referred to as 'Order.'

"11. Before any questions of fact can be considered, it is first necessary to determine if this court has jurisdiction to do more than to approve the Order. K.S.A. 74-2426 authorizes this appeal to this court and no question is presented as to procedure. When the Board of Tax Appeals makes an Order fairly and honestly, the court has no right to superimpose its opinion or to usurp the Board's function (*Mobil Pipeline Co. v. Rohmiller,* 214 Kan. 905, Syl. 3). It is only when the order of the Board is unreasonable, arbitrary or capricious that this court may assume to interfere. (*Kansas Ass'n of Public Employees v. Public Service Union,* 218 Kan. 509, Syl. 1 & 2).

"12. Bearing the foregoing matters in mind, K.S.A. 79-303 requires a listing of *property* by the entities therein set forth. It being agreed that appellee is a

manufacturer, K.S.A. 79-1005 is applicable (it has been agreed that the motor vehicles, real estate and certain other items are not in dispute herein and they are not considered in this opinion) and being a manufacturer, by definition, appellee must do something to the cattle besides kill them. By reason thereof, a process is involved.

"13. The provisions of K.S.A. 79-304 requires that appellee furnish the 'Assessor with a report of the monthly average *inventory* for the preceding calendar year. . . .' In the Order, Finding of Fact 6, which includes appellee's suggested Findings of Fact 15, 16 & 17, appellee clearly reflects that the Board has not considered the *inventory* but did consider *sales* as *inventory*—this is set out at Conclusion of Law # 7, which refers to Mr. Cloonan's testimony in TR # 3. At pages 15, 16 & 28 thereof; the following occurs at page 28:

" 'Q.  (by Mr. Perkins) Mr. Cloonan, then if I understand your testimony correctly, the rendering you made for 1974 was made entirely upon one day's sale?

" 'A.  Gross sale, yes, sir.'

"14. It should be further noted that the Board found appellee to be a manufacturer, but, at Finding of Fact # 16, states that there is never anything in process; and in the Conclusion of Law # 7 the Board adopts appellee's suggested Conclusion of Law of an average 'roll-over period' of 3 days from the time the beef arrives at the plant until it is on the loading dock.  .  .  .

"15.  It appears that Mr. Cloonan, in an attempt to be fair, decided one day's sales, included enhancement by processing, was such that it should equal the inventory for 3 days, but there is no reason stated why this should be so. (It should be noted that by reason of a directive from the Property Valuation Department, dated January 21, 1971, required substituting one DAY's manufacturer's stock for one month.) Mr. Cloonan indicated records were sketchy as to inventory and no dollar amount given but proof of sales were available. From his observation it was about 3 days from the time a live cow arrived at the Emporia plant until the finished product left the dock.  .  .  .  This leaves no room for doubt but that appellee is a manufacturer, and does process the beef in the Emporia, Kansas, plant.

"16.  It should be further noted, that the Board must have treated appellee Emporia Plant as a storage area or a warehouse and concluded that *supplies* used in the processing of the beef were in storage as they are not shown to have been listed for taxation. This is contrary to K.S.A. 79-1005.

"17.  Under these circumstances, the Court is of the opinion that the Board was unreasonable, arbitrary and capricious to the point where this court has jurisdiction to hear this appeal pursuant to K.S.A. 74-2426. In essence, it is the opinion of this court that statutes must be given strict interpretation of their unequivocal terms. There is a difference between '*inventory*' and '*one day's gross sales.*' Deviation by the Board of Tax Appeals in this degree is considered to be sufficient to permit the appeal.

"In *Kansas State Board of Healing Arts v. Foote,* 200 Kan. 447, 436 P.2d 828, the guidelines formulated by the Supreme Court are set out at page 450 in the following tenor:

" 'Rules firmly emerging from this line of authority may be summarized thus: A district court may not, on appeal, substitute its judgment for that of the administrative tribunal, but is restricted to considering whether, as a matter of law, the

tribunal acted fraudulently, arbitrarily, or capriciously, whether the administrative order is substantially supported by evidence, and whether the tribunal's action was within the scope of its authority.'

"18. In pursuing the first requirement as set forth in K.S.A. 74-2426, the turns and twists of this matter also determine the other two requirements. There is no substantial evidence that the Board of Tax Appeals considered inventory as required by K.S.A. 79-304. All they considered was 'one day's sale' and equated such to be 'inventory.' There is no substantial evidence apparent to this court that the terms 'inventory' and 'one day's sale' are synonymous, or, that in the instance of appellee 'inventory' equals 'one day's sale.' This is particularly true when Mr. Cloonan's testimony shows an average 'roll-over' period of three (3) days from the cow to the finished products thereof being on the dock. As an incidental matter, it further shows *processing* was being done at the Emporia Plant contrary to the Board's finding # 6.

"19. Mr. Cloonan prepared the appellee's rendition in toto.

*"Conclusions of Law*

"1. There is no question but the Board of Tax Appeals exceeded the scope of its authority when it determined 'one day's sale' was 'one day's inventory' without any substantial evidence upon which to base this assumption.

"There seems no question about the application or requirements of K.S.A. 79-1005. Appellee is stipulated to be a manufacturer as defined therein. Appellee is, therefore, subject to the balance of the requirements of the statute in averaging amounts of articles purchased and/or held for manufacturing, refining, or combining together with proceeds of the business and rendering a monthly average. It would appear that the directive of the Property Valuation Department of January 1, 1971, was to be applied to this process. Personal property consumed in the processing should have been listed for taxation as therein required.

"2. K.S.A. 79-303 requires appellee to list property for tax purposes, and should be read in relation to K.S.A. 79-1005.

"K.S.A. 79-304 requires appellee to list the property for tax purposes in certain places and renders certain property exempt. No problems appear to arise until the exemption occurs. This has been referred to as the Freeport Law. When personal property is moving in interstate commerce, it does not acquire situs for tax purposes in Kansas, unless Kansas is its final destination. Personal property consigned to a bonded warehouse, as defined by statute, for less than 2 years does not acquire tax situs if the warehouse operator keeps the required records, unless the property's ultimate destination is Kansas. In order to meet the requirement of exemption the party claiming the exemption must show it is applicable to the party's case. Taxation is the rule. Exemption is the exception. In order to come within this exemption appellee must meet the statute requirements and show, among other things, that: (1) More than 35% of the property was destined outside of Kansas; (2) Furnish the County Assessor with a report of the monthly average inventory for the prior year and the value of the shipments destined beyond Kansas borders for each month of the prior year. If he does this he will pay Kansas Ad Valorem tax only on that percent destined for Kansas. If he does not do this, he has no exemption.

"3. It would not appear, reading K.S.A. 79-1005 and K.S.A. 79-304, that consumables in the processing would be exempt within the 'Freeport Law' and must be taxed as personal property on an average amount.

"It is necessary that appellee must furnish the required information to meet the exemption or forego it. The appellee must furnish the average 'inventory' of which 3.2% assessed at 30% of its value is to be applied to the levy of 10.3978 mills.

"4. Before any personal property, after it is acquired and located in Lyon County can be said to be in storage, all processing must have been completed on that item and it be laid away for future use. This is to say if it is a half of beef, that it is cooled out and ready to ship to a final destination upon determination where it is to go from storage. If it is a cattle pac, that it be in the box and nothing more is to be done to it until it is loaded on the truck to be transported from storage. If it is the hides, that they have soaked in the brine the required number of days, or if it is any other by-product that it is in final form and no further processing can remain to be done here before shipment to the final destination and the item actually be in storage. Until this point is reached, the personal property remains inventory. This, of course, makes the inventory of personal property under the Freeport Law as set out in K.S.A. 79-304 vital to the exemption offered thereunder. Fair and equal taxing is essential to healthy business and the court feels certain, beyond any doubt, that appellee has more than adequate records stored in computers to develop any necessary inventory information within a matter of hours.

"For the above reasons this matter is respectfully remanded to the Board of Tax Appeals for further proceedings as may be necessary to determine the correct inventory, value and tax due.

"Counsel for appellants will please prepare the Journal Entry.

"Dated this 6th day of July, 1976, at Emporia, Kansas."

## K.S.A. 79-1005 provides:

"(a) Every person, company or corporation who shall hold or purchase personal property for the purpose of adding to the value thereof by any process of manufacturing, refining or by the combination of different materials, shall be held to be a manufacturer;

"(b) Every manufacturer shall be required to make out a statement of his or her personal property for taxation, in which he or she shall state the average value, estimated as provided in this section, of all articles purchased or held for the purpose of being used in the process of manufacturing, refining or combining and all articles manufactured by him or her, which he or she had in his or her possession or under his or her control during the year next preceding the first day of January preceding the time of making such statement.

"The average value of such property shall be ascertained by taking the amount of such property on hand or under his or her control in each month of such year or such portion thereof as he or she may have engaged in such business then add the monthly amounts and divide the aggregate amount by the number of months he or she was engaged in such business during such year; and such statement shall be verified on oath as required in other cases: *Provided,* That the property so listed shall not be valued or assessed at any higher rate than other property."

For the year 1974 the "freeport exemption" is set forth in K.S.A. 79-304 (Weeks 1969) which provides in part:

".  .  . That personal property which (*a*) is moving in interstate commerce

through or over the territory of the state of Kansas, or (b) is consigned to bonded and licensed warehouses or storage areas under the provisions of K.S.A. 82-161 to 82-171, inclusive, within the state of Kansas from outside the state of Kansas, for storage, shall be deemed not to have acquired a situs in the state of Kansas for purposes of ad valorem taxation if the warehouseman or operator of the storage area where such personal property is stored shall keep records of such property showing point of origin, date of receipt, type and quantity, date of withdrawal, and ultimate destination notwithstanding (1) that the final destination of said personal property is unknown a[t] the time of storage in Kansas or (2) that the interstate movement of the said personal property has been interrupted for not more than two (2) years by such storage in Kansas for reasons relating to the convenience, pleasure, or business of the shipper or owner of said property unless the ultimate destination of said property is within the state of Kansas: *And provided further,* That goods, wares, and merchandise stored as above described, if manufactured, assembled, joined, processed, packaged or labeled within this state are shipped to final destinations outside this state upon leaving such warehouses or storage areas shall be exempt from taxation in the same manner and for the same period of time while in such storage: *And provided further,* That in order to qualify personal property in any such warehouse or storage area for the exemption from taxation hereinbefore provided, the owner of such personal property must show by verified statement that the final destination of at least 35% of the sales or shipments from such warehouse or storage area during the previous calendar year were shipped in interstate commerce to a point outside the state of Kansas: *And provided further,* That the amount of exempt property shall be computed as follows: The owner shall furnish the county assessor with a report of the monthly average inventory for the preceding calendar year and a report of the value of shipments for final destination outside the state for each month of the previous calendar year. The owner shall be entitled to exemption of a percent of the average monthly inventory equivalent to the percent of value of total shipments to the value of shipments that were made in interstate commerce to points outside the state."

K.S.A. 79-1005 provides for the ascertainment of the average monthly value of property of the next preceding year. Mr. Cloonan used the one day's average gross sales figure for this purpose. He testified that one day's average gross sales reflected the entire inventory. He testified authority to use one day arose from a directive from the Property Valuation Department.

The directive from the Director of the Property Valuation Department (January 21, 1971) states in part:

"It is the opinion of the Department that in determining the monthly average, K.S.A. 79-1002 and 1005 must be read in conjunction with other statutes which contemplate an appraisal of property on a basic date, and, the appraisal procedure used must result in the same type of appraisal for merchants and manufacturers stock as we have in the appraisal of other types of property. Therefore, the *appraisal* of merchants and manufacturers stock for ad valorem purposes must result in a value which has been determined to be a single average DAY within the assessment period (or calendar year), as it is for other property."

The basic point of contention is whether one day's gross sales equals actual inventory required by K.S.A. 79-1005.

Appeals from orders of the Board of Tax Appeals are governed by K.S.A. 74-2426, which in its last paragraph provides:

"No appeal may be taken to the district court from any order determining, approving, modifying or equalizing the assessment of property for property tax purposes unless such order is unreasonable, arbitrary or capricious. . . ."

In *Mobil Pipeline Co. v. Rohmiller,* 214 Kan. 905, 522 P.2d 923 (1974), this court found that the trial court improperly substituted its judgment for the Board of Tax Appeals:

"Matters of valuation and assessment are administrative in character and a determination of the Board of Tax Appeals acting within its legislative authority, when fairly and honestly made, is final, and courts will not interfere so as to usurp the Board's function or substitute their judgment for that of the Board." (Syl. 3.)

Accord, *Cities Serv. Oil Co. v. Board of County Comm'rs,* 224 Kan. 183, 578 P.2d 718 (1978); *Masson, Inc. v. County Assessor of Wyandotte County,* 222 Kan. 581, 567 P.2d 839 (1977).

The leading case on judicial review of administrative agencies is *Kansas State Board of Healing Arts v. Foote,* 200 Kan. 447, 436 P.2d 828 (1968):

"A district court may not, on appeal, substitute its judgment for that of an administrative tribunal, but is restricted to considering whether, as a matter of law, (1) the tribunal acted fraudulently, arbitrarily or capriciously, (2) the administrative order is substantially supported by evidence, and (3) the tribunal's action was within the scope of its authority.

"In reviewing a district court's judgment, as above, this court will, in the first instance, for the purpose of determining whether the district court observed the requirements and restrictions placed upon it, make the same review of the administrative tribunal's action as does the district court." (Syl. 1, 2.)

The Board found IBP to be a manufacturer with average daily sales of $1,500,000.00 but that it had nothing ever in process. The testimony was that live cattle arrive each morning, are slaughtered, and by the close of the second shift are in boxes or are hanging. The testimony was clear that approximately three days elapsed between the time the live animal arrives at the plant and the beef is shipped out. This is the so-called 3-day "roll-over" period.

The district court concluded that the average gross daily sales figure was not the equivalent of inventory required by K.S.A.

79-1005. Mr. Cloonan testified it was a fair equivalent in his opinion but does not give a logical, reasonable basis for this result. A simple analogy might be helpful. Assume 1,000 cattle go in one end of a barn each day and 1,000 processed carcasses go out the other end each day, but that it takes three days for any individual steer to make the trip through the barn. On any given day, then, 3,000 cattle or carcasses are in the barn. Gross sales would be for 1,000 carcasses. Under the Board's findings, no processing would have occurred and the inventory in the barn would be 1,000 when in fact there were 3,000 cattle or carcasses on any given day.

IBP has its entire plant licensed as a warehouse. The Board found no processing occurs at the plant in spite of the fact that live cattle are received at the plant and converted to beef, either hanging or boxed, with sales of one and a half million dollars per day. Obviously, extensive processing occurred and the finding that no processing occurred is not supported by the evidence. The classification of a manufacturing or processing plant as a licensed warehouse does not pull the umbrella of the freeport exemption over the entire operation save intrastate gross sales of one day. As far as beef, hides, etc., for interstate sale are concerned, a proper determination must be made as to when processing begins and ends in determining inventory. On goods for intrastate shipment, the inventory cannot be determined on one day's gross sales. The burden is on the manufacturer or processor to establish the claimed exemption and any alleged difficulty in providing adequate records does not defeat the statute and permit taxation on a non-statutory basis of taxpayer's creation.

We conclude that the district court correctly found that the order of the Board was unreasonable, arbitrary, and capricious. The findings and conclusions of the district court are supported by the evidence and the law of Kansas.

The judgment remanding the matter to the Board for further proceedings is affirmed.

HOLMES, J., not participating.