No. 51,133

UNIFIED SCHOOL DISTRICT NO. 461, WILSON COUNTY, KANSAS, *Appellee,* v. MARK DICE, *Appellant.*

(612 P.2d 1203)

Opinion filed June 14, 1980.

*David E. Pierce,* of Neodesha, argued the cause and was on the brief for the appellant.

*Harry L. Depew,* of Neodesha, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

HERD, J.: This is an appeal by Mark Dice, a teacher for U.S.D. No. 461, from a district court order affirming the Board of Edu-

cation's decision not to renew his teaching contract for the 1978-1979 school year.

Mark Dice has been employed as an instrumental music instructor for Heller Elementary School, Northlawn Elementary School, and the Junior and Senior High Schools of Neodesha since 1974. His contract had been renewed each year until March 6, 1978, when the Board voted to not renew his teaching contract for the 1978-79 school year. Appellant was notified of the Board's decision and was requested to resign. On March 15, 1978, appellant submitted his resignation and requested a hearing. On March 24, 1978, Dice, by letter, requested that his resignation be revoked. The Board granted Dice's request. The time restrictions imposed by K.S.A. 1977 Supp. 72-5437 had passed and the parties agreed to set their own time schedule. The Board was to furnish its notice and reasons for nonrenewal by April 20, 1978. Those reasons were submitted to Dice in a letter dated April 12, 1978, as follows:

"Mr. Mark Dice
Instrumental Music Director
Neodesha USD # 461
RFD #2
Neodesha, Kansas 66757
"Dear Mr. Dice:
"The Neodesha USD #461 Board of Education, meeting in a regularly scheduled session, on April 10, 1978, voted not to renew your contract for teaching for the 1978-79 school year. This notice is being given you as directed by the Board.

"Pursuant to the 'Agreement' of the parties (Board & Teacher) and as provided by KSA 72-5437 the reasons for the decision of non-renewal are given in writing as follows, to-wit:

Lack of interest in school matters other than your own school work and activities.

Lack of classroom supervision.

Failure to attend designated teachers meetings.

Insufficient attention to proper teacher attire at school functions.

Not always being on time or present at beginning of class and other activities.

Insufficient control of outside school activities.

Lack of public appearances of any solo or small ensembles.

More than normal number of parent complaints.

Unteacher-like conduct with and concerning students.

Insufficient preparation for 1977 band competition and with no competition in 1978.

Not following and failure to follow directions of school officials, in effect, disrespect or insubordination applicable to numerous items including those of not wearing a band uniform, failure to use buses for activities, not promptly securing your teacher certification, etc.

"Pursuant to KSA 72-5438 you may have this matter heard by a hearing committee upon written notice properly filed with the Board of Education within fifteen days from the date of this notice of nonrenewal, and you should designate therein one hearing committee member.

"Yours very truly,
    /s/ Edwin G. Lyon
"Edwin G. Lyon,
Superintendent of Schools"

Appellant requested a hearing on April 25, 1978, pursuant to K.S.A. 1977 Supp. 72-5438. The hearing committee was formed pursuant to that statute and a hearing was held on June 26 and 27, 1978. The committee recommended appellant's "contract be renewed for one probationary year only (1978-1979) if Mr. Dice will agree to correct the deficiencies listed in Items 3, 4, 5, 6, 7 and 10."

The committee's recommendation was submitted to the members of the Board of Education who, nonetheless, notified Dice by letter of August 1, 1978, that they had decided not to renew his contract for the 1978-1979 school year. The Board's decision was appealed to the district court where it was affirmed. This appeal followed.

Appellant's first contention is that he was not given a hearing at a meaningful time and was thereby denied due process. He argues K.S.A. 1977 Supp. 72-5437 contemplates that prior to any official action with regard to the termination of a teacher's contract, the Board must first give the teacher notice of its intent to nonrenew and afford the teacher a hearing to present opposition. Appellant claims that procedure was not followed in the case at bar because, he maintains, the Board's action on March 6, 1978, was a final decision not to renew and was not an "intention" to nonrenew.

The purpose of notice of nonrenewal is to advise the teacher of Board action early enough in the year to afford the teacher a reasonable opportunity to find other employment. The notice of intention to nonrenew is final action only if the teacher permits it to become so by failing to request a due process hearing. In *Schulze v. Board of Education,* 221 Kan. 351, 353-354, 559 P.2d 367 (1977), this court stated:

"The right to hire, fire, and discipline employees is within the authority granted to a school board by statute. (K.S.A. 72-8205.) The board, however, must provide

due process. (*Wertz v. Southern Cloud Unified School District,* 218 Kan. 25, 542 P.2d 339, and cases cited therein.) The essential elements of due process of law are notice and an opportunity to be heard, and to defend in an orderly proceeding adapted to the nature of the case."

Appellant relies heavily on *Wertz v. Southern Cloud Unified School District,* 218 Kan. 25, 542 P.2d 339 (1975), in support of his argument that he was denied due process because he was denied a hearing before the Board voted its intention to nonrenew his contract. In that case, Charles Wertz was notified by the superintendent that he was suspended from further teaching, after having been previously requested to improve his class discipline problems. The notice of suspension gave Wertz 30 days to request a hearing. The following day, the Board met and voted to discharge Wertz. Wertz was informed of that decision and given 30 days to request a hearing. Wertz had not been present and had no notice of the meeting during which the Board voted to discharge him. Wertz brought suit for reinstatement and damages. We held Wertz was entitled to a hearing prior to discharge and under the facts of that case a subsequent hearing would not have cured the failure to provide such a hearing.

*Wertz* is not authority for appellant's position. The Board voted to discharge the teacher during the term of his contract without a hearing. Here, Dice is being nonrenewed at the end of his contract after having been given a proper hearing.

Appellant also relies on the cases of *Bogart v. Unified Sch. Dist. No. 298 of Lincoln Cty.,* 432 F. Supp. 895 (D. Kan. 1977), and *Wagner v. Little Rock School District,* 373 F. Supp. 876 (E.D. Ark. 1973) in support of this issue.

In *Bogart,* the teacher was convicted of possession of marijuana in connection with his son's arrest for drug violations. The Board voted to dismiss him and sent a letter to the teacher stating his contract was terminated in mid-year "for conduct unbecoming an instructor, which conduct resulted in your conviction in the Lincoln County District Court of the offense of possession of marijuana." *Bogart* at 900. The teacher was later acquitted of the charges and he notified the Board of the court's action, demanding reinstatement. The Board did not reinstate the teacher. The teacher was given no opportunity to controvert the dismissal. He brought an action against the Board for reinstatement and damages alleging he was deprived of property and liberty interests arbitrarily, capriciously and without due process of law. The

court held due process requires a hearing before an impartial tribunal. Procedural due process requires notice of hearing and "a method of decision which does not offend the concept of fundamental fairness." *Bogart* at 905. The court also stated at 906:

"Substantive due process requires the decision-maker to be presented with and to consider a minimal amount of credible evidence sufficient to support a legal basis for its ultimate action. Again, what constitutes sufficient evidence may vary from situation to situation, although it need be only enough to prevent the decision from being totally arbitrary and capricious in the case of administrative action."

The court held the plaintiff's due process rights were "seriously affronted." *Bogart* at 906. In addition, the court held the defendant's actions were "so factually baseless as to amount to wanton, oppressive and bad faith conduct."

In *Wagner v. Little Rock School District,* 373 F. Supp. 876, a black elementary school teacher was terminated during the contract period without written notice, specification of charges or a hearing. Wagner had taught for 22 years at an all-black elementary school and beginning with the 1971-1972 school year, was involuntarily transferred; "she began to receive regular and sustained criticism of her ability as a teacher in vague and generalized language." *Wagner* at 878. On January 28, 1972, to be exact, she was orally informed by the assistant superintendent of the Little Rock Public Schools that her employment would terminate as of February 1, 1972. She sued, alleging a denial of her Fourteenth Amendment rights to procedural due process. Defendant Board alleged Wagner received written notice of specific teaching deficiencies and that a conference had been held with her supervisor during which Wagner was given the opportunity to discuss the teaching deficiencies but she declined. It alleged, therefore, that she was given written notice and was afforded an opportunity to be heard. The trial court held the termination was not motivated by racial reasons and affirmed the Board's actions. The question on appeal was whether Wagner was given her due process rights. Were the various communications and meetings between the parties and an offer of an appearance before the Board sufficient to meet constitutional standards?

The court found the meetings during which plaintiff was informed of the deficiencies of her work were insufficient to meet the requirement of due process which is "the opportunity to be

heard, 'at a meaningful time and in a meaningful manner.' " *Wagner* at 881.

The court continued at page 881:

"A constitutionally adequate hearing must be held before a neutral hearing officer and the charged party be given reasonable notice prior to the hearing, not only of the particulars of the alleged misconduct but also of the possible adverse consequences of the hearing."

The court also held that the fact the Board gave plaintiff the opportunity to meet with them *after* the termination did not cure any procedural defect. As stated at page 882:

"The individual who is the object of the proposed governmental action should not have to bear the handicap of overcoming the inertia of the status quo; he should not bear the burden of persuading the decision-maker to reverse a fait accompli unless the proponent of the action can show specific, valid, and appropriate reasons for precipitous, pre-hearing action."

The court held the absence of a hearing was improper and violated Mrs. Wagner's rights of procedural due process.

Neither *Bogart* nor *Wagner* apply to this case. In those cases neither teacher was given a hearing prior to the Board's termination of the teacher's employment. In addition, both cases dealt with cessation of employment during a teaching contract, rather than nonrenewal at year's end. Dice was given notice and an opportunity to be heard at a meaningful time and in a meaningful manner. He was given a hearing during which he was allowed to present a defense to the proposed Board action. Constitutional due process does not require two hearings be given. *Goldberg v. Kelly*, 397 U.S. 254, 25 L.Ed.2d 287, 90 S.Ct. 1011 (1970).

Moreover, we find the statutory procedural process was followed. The appropriate statutes are K.S.A. 1977 Supp. 72-5437 and K.S.A. 1978 Supp. 72-5438. K.S.A. 1977 Supp. 72-5437 states:

"**Continuation of teachers' contracts; exceptions; notice of termination or nonrenewal; change of terms.** All contracts of employment of teachers, as defined in K.S.A. 1976 Supp. 72-5436, and amendments thereto, except contracts entered into under the provisions of K.S.A. 72-5412a, shall be deemed to continue for the next succeeding school year unless written notice of termination or nonrenewal is served as hereinafter provided. Written notice to terminate a contract may be served by a board upon any teacher prior to the time the contract has been completed, and written notice of intention to nonrenew a contract shall be served by a board upon any teacher on or before the fifteenth day of March. A teacher shall give written notice to the board on or before the fifteenth day of April if the teacher does not desire continuation of said contract. Terms of a contract may be changed at any time by mutual consent of both the teacher and the board."

The statute was amended in 1978 to change the dates of the notice from March 15 and April 15 to April 15 and May 15. The procedure to be followed is found in K.S.A. 1978 Supp. 72-5438:

"**Contents of notice; hearing; designation of hearing committee members; appointment by district judge, when.** Whenever a teacher is given written notice of intention to not renew the teacher's contract as provided in K.S.A. 1976 Supp. 72-5437, or whenever such a teacher is terminated before the end of his or her contract term, the teacher shall be given a written notice of the proposed nonrenewal or termination including (1) a statement of the reasons for the proposed nonrenewal or termination, and (2) a statement that the teacher may have the matter heard by a hearing committee, upon written notice filed with the clerk of the board of education or the board of control, or the secretary of the board of trustees within fifteen (15) days from the date of such notice of nonrenewal or termination that he or she desires to be heard and designating therein one hearing committee member. Upon the filing of any such notice, the board shall, within fifteen (15) days thereafter, designate one hearing committee member. The two hearing committee members shall designate a third hearing committee member who shall be the chairman and who shall in all cases be a resident of the state of Kansas. In the event that the two hearing committee members are unable to agree upon a third hearing committee member within five (5) days after the designation of the second hearing committee member, a district judge of the home county of the school district, area vocational-technical school or community junior college shall appoint the third hearing committee member upon application of the teacher or either of the first two hearing committee members."

Clearly, the statutory requirements of notice and an opportunity to be heard were followed in this case. Dice was given notice and an opportunity to be heard, and the Board was free to accept or reject the recommendation of the hearing committee. Our procedure comports with that set forth in numerous jurisdictions. See generally Annot., 92 A.L.R.2d 751.

We note the result in our recent case of *Gillett v. U.S.D. No. 276,* 227 Kan. 71, 605 P.2d 105 (1980). The teacher received a notice of nonrenewal pursuant to the terms of K.S.A. 1977 Supp. 72-5437. The teacher requested a hearing and the committee found insufficient evidence to terminate her contract. The Board considered the evidence and the recommendation of the hearing committee and decided to follow its decision to terminate the teacher. As in the present case, the Board in *Gillett* made no findings of fact and presented no reason in writing for its rejection of the hearing committee's recommendation. The due process procedure was thoroughly discussed in that case and we did not find a teacher is entitled to two hearings under our statutes. As stated in *Gillett* at pages 77 and 78:

"[T]he purpose of the due process hearing is to inquire into the reasons for the dismissal or nonrenewal of the teacher and to determine whether or not the evidence presented establishes good cause within the spirit and purpose of the teacher tenure statutes."

. . . .

"The purpose of the due process hearing granted a teacher by statute is to develop the grounds that have induced the board to give the teacher notice of its desire to discontinue her services, and to afford the teacher an opportunity to test the good faith and sufficiency of the notice. The hearing must be fair and just, conducted in good faith, and dominated throughout by a sincere effort to ascertain whether good cause exists for the notice given. If it does not, or if the hearing was a mere sham, then justification for the board of education's action is lacking."

The requirements of the due process statutes have been met as well as constitutional guarantees of due process. This issue has no merit.

Appellant claims he was not given a fair and impartial decision by the Board and the Board exhibited bias against him. In addition, he claims the application of K.S.A. 1979 Supp. 72-5436 *et seq.* to the facts of this situation creates an unconstitutional result not contemplated by the legislature. Appellant states due process requires that hearings be before a fair and impartial tribunal. He cites the cases of *Morrissey v. Brewer,* 408 U.S. 471, 33 L.Ed.2d 484, 92 S.Ct. 2593 (1972), and *Withrow v. Larkin,* 421 U.S. 35, 43 L.Ed.2d 712, 95 S.Ct. 1456 (1975), as support for his interpretation of a proper due process hearing.

In *Morrissey v. Brewer* the U.S. Supreme Court considered the requirements for due process hearings regarding determinations of a parole violation and the revoking of parole. The court held in order to obtain the greatest objectivity an uninvolved person should make the determination that a reasonable ground exists for revocation of parole.

In *Withrow v. Larkin,* a doctor sued members of the Medical Examining Board seeking an injunction against the enforcement of suspension statutes. The Board had held an investigative hearing that was attended by the doctor and his attorney. The doctor was invited to explain any of the evidence presented but was not allowed to cross-examine any of the witnesses that testified. A "contested hearing" was to be held later on at which time the Board would determine whether the doctor's license would be temporarily suspended. The doctor moved for a restraining order to block the proposed hearing and a district court held the Board's actions in investigating charges, presenting and

ruling on evidence and imposing punishment were in violation of the doctor's due process rights. The Board did not hold the contested hearing but did hold a "final investigative session." The Board found the doctor had engaged in specified conduct proscribed by the statute and found probable cause for revoking the doctor's license.

The district court found the Board could not temporarily suspend the doctor's license at its own contested hearing on charges evolving from its own investigation. That court based its decision on the absence of "an independent, neutral and detached decision maker . . ." (*Withrow* at 42) and held the state statute authorizing the hearing procedure was unenforceable.

The U.S. Supreme Court held that combining the investigatory and adjudicatory functions of an administrative hearing were not a denial of due process in that case; however, appellant herein relies on the court's statement at page 58:

"Clearly, if the initial view of the facts based on the evidence derived from nonadversarial processes as a practical or legal matter foreclosed fair and effective consideration at a subsequent adversary hearing leading to ultimate decision, a substantial due process question would be raised."

Applying these cases to the present situation, appellant argues the Kansas due process procedure, properly applied, requires a statutory hearing committee to serve as a fact finder, as discussed in *Morrissey.* Prior to any action by the Board regarding nonrenewal, this committee would determine whether the teacher had committed infractions sufficiently improper to possibly result in a nonrenewal of his contract. The Board would then apply the committee's findings and determine whether it wished to renew the contract.

It is clear neither case is applicable to this situation. *Morrissey* proposed a rather elaborate and detailed procedure to determine whether a parolee's liberty should be revoked because of possible violations of his parole. The interest to be protected is substantially different. In the case of a parolee it is his continued liberty, the termination of which "inflicts a 'grievous loss' . . . ." *Morrissey* at 482. That procedure is inapplicable to this situation. Dice received a fair and impartial review of his case before the hearing committee. That committee heard testimony from the Board, Dice and other witnesses and recommended he be renewed for one probationary year. The Board is empowered by

law to accept or reject the decision of the hearing committee. K.S.A. 1979 Supp. 72-5443. The record reveals the hearing was fair and impartial.

Appellant alleges the Board exhibited bias toward him when several members testified in support of the Board's decision to nonrenew Dice. This argument is clearly erroneous. It is necessary for the Board members to explain the reason for their decision. Additionally, the Board is authorized by law to "testify in its behalf and to give reasons for its actions, rulings or policies . . . ." K.S.A. 1979 Supp. 72-5439(*d*).

Appellant concedes the due process procedure found in K.S.A. 1979 Supp. 72-5436 *et seq.* is constitutional yet alleges the application of the statutes creates an unconstitutional result in this particular situation. Appellant offers no authority for this allegation and simply states:

"By participating in the hearing as witnesses, by holding a separate hearing among themselves in executive session to vote the initial non-renewal, and by the general animosity the Board demonstrated towards Appellant, it made itself a 'biased body' which rendered the decision to non-renew Appellant, a violation of K.S.A. 1978 Supp. 72-5439(f)."

We have found no evidence of bias on the part of the Board against Dice. He received a fair and impartial hearing and due process was accorded. The statutes were followed to the letter and we cannot find their operation produced an unconstitutional result. The argument is without merit.

Finally, appellant contends the Board's action was arbitrary, capricious and not supported by substantial evidence. This court's scope of review is stated in *Kansas State Board of Healing Arts v. Foote,* 200 Kan. 447, Syl. ¶ 2, 436 P.2d 828 (1968):

"In reviewing a district court's judgment . . . this court will, in the first instance, for the purpose of determining whether the district court observed the requirements and restrictions placed upon it, make the same review of the administrative tribunal's action as does the district court."

See *Gillett v. U.S.D. No. 276,* 227 Kan. 71, 79; *Lyon County v. Iowa Beef Processors, Inc.,* 224 Kan. 239, 249, 580 P.2d 1300 (1978); *Kansas Ass'n of Public Employees v. Public Service Employees Union,* 218 Kan. 509, 511, 544 P.2d 1389 (1976); *Olathe Hospital Foundation, Inc. v. Extendicare, Inc.,* 217 Kan. 546, 553, 539 P.2d 1 (1975); *Coggins v. Public Employee Relations Board,* 2 Kan. App. 2d 416, 419, 581 P.2d 817, *rev. denied* 225 Kan. 843 (1978).

The district court's review of an administrative decision is governed by *Brinson v. School District,* 223 Kan. 465, Syl. ¶ 6, 576 P.2d 602 (1978), where we stated:

"In reviewing a decision of an administrative agency or tribunal under authority of K.S.A. 1974 Supp. 60-2101(*a*) a district court may not substitute its judgment for that of the administrative agency or tribunal; it is limited to deciding whether: (1) The agency or tribunal acted fraudulently, arbitrarily or capriciously; (2) the administrative order is substantially supported by evidence; and (3) the tribunal's action was within the scope of its authority."

Arbitrary, oppressive or capricious conduct is shown "where an order of an administrative tribunal is based upon findings which are not substantially supported by evidence in the record." *Neeley v. Board of Trustees, Policemen's & Firemen's Retirement System,* 212 Kan. 137, Syl. ¶ 3, 510 P.2d 160 (1973). Substantial evidence is defined in *Brinson* at page 473 "as that which possesses relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved."

Let us examine the evidence to determine if the Board's decision is supported by substantial evidence. Members of the Board testified that Dice refused to wear his band director's uniform and substituted a "T" shirt with letters across the front inscribed "band director." Mr. Dice was informed of Board dissatisfaction with this practice on numerous occasions but the admonitions were ignored. This evidence is unrefuted. There is undisputed evidence that appellant used grades as a disciplining technique and was informed by the principal of the Board's dissatisfaction with the practice. Dice promised to correct this mistake. On one occasion appellant took a group of grade school children to Parsons in a school bus and drove back to Neodesha leaving four of the children in Parsons to find their own way home. Appellant admitted this evidence was true but excused himself by saying the children failed to meet the bus at the appointed time. The evidence was also undisputed that the high school band ratings at music festivals had dropped from I's and II's to III's and IV's during appellant's tenure as band teacher. Finally, the evidence is undisputed that appellant was not punctual in his appointments, failed to check in at the office each morning and missed faculty meetings on many occasions. All of these matters were brought to appellant's attention in evaluation sessions and reports made by the school principals.

There is substantial evidence to support the actions of the Board. We find its decision was made within the scope of its authority and was not arbitrary or capricious, fraudulent or unreasonable. *Gillett v. U.S.D. No. 276*, 227 Kan. 71.

The judgment of the trial court is affirmed.